" BELLA   DENTON," Petitioner,   v.   " ARTHUR   DENTON," Respondent.*

Domestic Relations Court of New York, Family Court, New York County, September 16, 1942.

---

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York.

*Fitzgerald Phillips* for petitioner.

*Harry Z. Kaufman* for respondent.

SICHER, J. In this proceeding to require support of alleged wife, question sharply arises as to the power of the Family Court Division of the Domestic Relations Court of the City of New York (1) to direct issuance of a commission to examine upon written interrogatories at Charleston, West Virginia, two residents of that State as witnesses in respondent's behalf, and

(2) to determine pursuant to, and in the manner described in, Civil Practice Act, section 391, the law of West Virginia governing the meaning and effect of a certain decree entered September 13, 1923, in the Circuit Court for Kanawha County, West Virginia, which adjudged that one " Albert Reid " and " Bella Reid " (petitioner herein) were thereby divorced from each other " from bed and board."

At a June 3, 1942, hearing it was established that petitioner and respondent had been the principals in a formal marriage ceremony at the City Clerk's Office, Borough of Manhattan, on October 21, 1935; that respondent was then a widower; and that petitioner had previously married said " Albert Reid " but sincerely believed herself to have been absolutely divorced from him in West Virginia before June, 1924, and she had not since seen nor heard from him. Evidence was also taken as to the circumstances of the separation of the parties in March, 1942, their respective earnings, petitioner's physical condition, respondent's debts, and the cost of maintaining a twelve-year-old daughter by his first marriage. And at the conclusion of that hearing the following was endorsed on the petition: " Subject to respondent's right to submit on adjourned date competent further evidence to overcome presumption of validity of their ceremonial marriage, the parties are adjudged husband and wife. Testimony concluded except as to that one point. Adjourned to July 1st, 1942. Temporary order continued meanwhile."

Such temporary order, in the sum of five dollars a week, had been made " without prejudice " on May 14, 1942, on the filing of the petition and the scheduling of the trial for June 3, 1942.

The foregoing presumption is one which " can only be negatived by disproving every reasonable possibility. Proof of the solemnization of a ceremonial marriage between parties gives rise to a true presumption of its validity." (Headnote, *Matter of Dugro*, 261 App. Div. 236; see, also, *Matter of Salvin*, 106 Misc. 111, 112; *Matter of Biersack*, 96 Misc. 161, affd. 179 App. Div. 916.) " It is not incumbent upon those asserting a marriage to prove that an earlier marriage was terminated by death, annulment or divorce. The law is well settled that in the case of conflicting marriages of the same spouse this presumption of validity operates in favor of the second marriage and the burden of showing the first marriage is on the party asserting it. Even where this is established it may be presumed in favor of the second marriage that at the time thereof the first marriage had been dissolved either by a decree of divorce or death of

the former spouse, so as to cast the burden of adducing evidence to the contrary on the party attacking the second marriage." (*Kopit* v. *Zilbersæmidt*, 35 N. Y. S. 2d 558, 566.)

At a July 1, 1942, further hearing, respondent duly proved the prior marriage of petitioner and said " Albert Reid " on September 2, 1914, and the entry of the above-described September 13, 1923, decree of the Circuit Court for Kanawha County, West Virginia; and there was also introduced in evidence an exemplified copy of the docket entries in that matrimonial action showing that no further steps had been taken in that court by either party since the entry of that decree.

Respondent's counsel offered to prove by a June 17, 1942, letter from the Clerk of the Circuit Court for Kanawha County, West Virginia, that under the law of that State such type of divorce decree did not free the parties to remarry except each other. But objection to admission of that letter was sustained; and it was also ruled that this court cannot take judicial notice of any West Virginia statute provisions but that such law must be proved as a fact. (*Gavin* v. *Malherbe*, 146 Misc. 51, affd. 240 App. Div. 779, affd. 264 N. Y. 403.)

It was further ruled that even if the September 13, 1923, decree did not confer on petitioner legal capacity to contract the marriage with respondent on October 21, 1935, nevertheless the presumption of the validity of such marriage was not overcome in the absence of proof that " Albert Reid " was still alive on October 21, 1935. So, the matter was adjourned to August 4, 1942, to afford respondent opportunity to present competent evidence on that phase and, also, of the applicable West Virginia law. And the temporary order was continued upon the understanding that petitioner might ask for a larger award against respondent when and if the court should finally rule that the relation of husband and wife exists for the purposes of a support order of this court.

Upon August 4, 1942, the parties and their attorneys again appeared. Respondent's counsel argued that the provisions of section 391 of the Civil Practice Act enable this court to ascertain by personal research and decide the West Virginia law determinative of the meaning and effect of the aforementioned September 13, 1923, decree; and as evidence that said " Albert Reid " was living at the time of the ceremonial marriage between petitioner and respondent there was tendered a letter purportedly written by said " Albert Reid " at Crown Hill, West Virginia, on July 13, 1942. But upon petitioner's denial of the handwriting it was excluded for lack of identification.

Thereupon respondent's counsel served affidavit and notice of motion, returnable August 28, 1942, for an order directing the issuance of a commission in this proceeding to a designated Commissioner at Charleston, West Virginia, " to examine under oath pursuant to Section 288 *et seq.* of the Civil Practice Act, upon written interrogatories to be annexed thereto " on respondent's behalf (1) a specified member of the West Virginia bar " to prove the laws of the State of West Virginia, the status of the marital proceedings brought in Charleston, West Virginia by ' Albert Reid ' against the petitioner herein, the significance of that proceeding, the effect of the decree entered therein, all the steps taken therein, and the transactions between this witness and ' Albert Reid ' the first husband of the petitioner herein;" and (2) said " Albert Reid " to show that he is still living and the person who married petitioner on September 2, 1914 and procured the aforementioned September 13, 1923, decree of divorce.

On the return day of that motion petitioner's attorney filed affidavit and brief in opposition, and respondent also attended. But respondent's attorney was not present, because respondent's failure to compensate or communicate with him caused counsel to doubt that he still represented respondent. Accordingly, the clerk was directed to notify respondent and his attorney of record that unless brief be filed or new attorney be substituted by noon of September 4, 1942, the matter would be decided on the papers and evidence now before the court.

No brief has been filed in respondent's behalf nor has there been any substitution of a superseding attorney. However, respondent's attorney of record has cooperated by submitting all the exhibits received in evidence or marked for identification in respondent's behalf during the several hearings.

Respondent's motion for a commission to take the depositions of witnesses at Charleston, West Virginia, must be denied, for lack of power to grant it.

The provisions of article 29 of the Civil Practice Act for testimony by deposition (§ 288 *et seq.*) are inapplicable to the Domestic Relations Court of the City of New York. The Civil Practice Act applies to the civil practice in all the courts of record of this State (Civ. Prac. Act, § 1); but although a civil tribunal (*Matter of Kane* v. *Necci,* 269 N. Y. 13), the Domestic Relations Court of the City of New York is not a court of record. (Judiciary Law, § 2.) It is also only a statutory court of limited jurisdiction and enumerated powers; and nowhere in the statute creating it and defining its functions (L. 1933, ch. 482, as

amended) is there any mention of depositions. In that respect the Domestic Relations Court Act of the City of New York differs markedly from other legislative enactments which confer upon the statutory courts thereby respectively created specific authority to take testimony by deposition; for example, Children's Court Act of the State of New York, section 42 (L. 1922, ch. 547, as amended); Justice Court Act, sections 202-213 (L. 1920, ch. 937, as amended), and New York City Municipal Court Code, sections 101-116 (L. 1915, ch. 279, as amended).

The Domestic Relations Court of the City of New York originated on October 1, 1933, from a consolidation of the then Children's Court of the City of New York and of the then Family Court part of the City Magistrates' Court system. That predecessor Children's Court of the City of New York had been created by Laws of 1924, chapter 254, which likewise had contained no mention of depositions notwithstanding that provision for appointment of a commission to take testimony and receive evidence and report same to the court for its determination appears in section 42 of the analogous Children's Court Act of the State of New York. Likewise, the predecessor Family Court part of the City Magistrates' Court system, being a criminal court, had been governed by the Code of Criminal Procedure (see *People* v. *Redmond,* 225 N. Y. 206, 208), which provides for examination of witnesses on commission only at the instance of the accused (Code Crim. Pro. §§ 636-657), and the power to issue such commissions is an innovation on the common law and not extendable to any situation not specifically covered in the statute. (*People* v. *Morris,* 151 Misc. 212; *People* v. *Haight,* 13 Abb. N. C. 197.) Similarly, the right to take depositions in civil actions of law was unknown at common law and is wholly a matter of statutory authorization. (See 26 C. J. S. Depositions, §§ 3, 4, and cases cited.) Analogously, there is no inherent common-law power even in a court of general jurisdiction to order an examination of the adverse party before trial (*Heishon* v. *Knickerbocker Life Ins. Co.,* 77 N. Y. 278, 279); it is a power strictly statutory. (Cf. *Mitchell* v. *Schroeder,* 94 Misc. 270, affd. 174 App. Div. 851.)

Whether intentionally or inadvertently, the Domestic Relations Court Act of the City of New York contains no provisions for any form of deposition.

Section 12 thereof confers on the Board of Justices of the Court the power and duty to make rules and regulations regarding practice and procedure in both divisions, and section 129 provides that Family Court Division hearings shall be con-

ducted in accordance with such rules as the Board of Justices may adopt. There is no need to consider whether that rule-making function may be used to provide for commissions to take testimony outside of the State in the absence of express authorization therefor among the powers enumerated in the parent statute. (Cf. *Chase Watch Corp.* v. *Heins,* 284 N. Y. 129, 134.) For, the existing Rules of Practice of the Family Court Division as last adopted by the Board of Justices make no mention of evidence by deposition.

Formal order denying respondent's motion for issuance of a commission may, at his option, be presented by October 1, 1942, at my chambers, on three days' notice of settlement. However, in my view, that order would not be separately appealable, because it is not such a '' final order or judgment of the Court '' as may be the subject of appeal under Domestic Relations Court Act, section 58. (Cf. *Matter of Cheney* v. *Cheney,* 255 App. Div. 302.) But the denial of respondent's application for issuance of a commission may be deemed a ruling in the course of the trial and part of the record underlying the final order of support entered simultaneously with the filing of this opinion, from which order appeal may be taken by appropriate timely notice in accordance with Domestic Relations Court Act, section 58.

This court is also without power to ascertain by personal research and decide pursuant to Civil Practice Act, section 391, the law of West Virginia governing the meaning and effect of the aforementioned September 13, 1923, decree of the Circuit Court for Kanawha County, West Virginia.

As above stated, the Civil Practice Act applies to the civil practice in all courts of record in the State of New York, but the Domestic Relations Court of the City of New York is not a court of record. Nor has the Domestic Relations Court Act of the City of New York incorporated by reference any part of Civil Practice Act, section 391. Domestic Relations Court Act, section 58, expressly provides that articles 37 and 39 of the Civil Practice Act shall relate to appeals from final orders of this court insofar as such provisions may be practically applied thereto. But in the absence of any like incorporation of the realistic statutory modifications effected by Civil Practice Act, section 391, this court is bound by the settled common-law rule that the law of a sister State or foreign country is a fact which must be proved by evidence in the same manner as any other fact. (See *Croker* v. *Croker,* 252 N. Y. 24, 26.)

True, in a proceeding before a New York court the applicable common law of another State is deemed to correspond with that of the State of New York. (*Southworth* v. *Morgan,* 205 N. Y. 293, 296; *Mencher* v. *Goldstein,* 240 App. Div. 290, 291; *Matter of Chinsky,* 159 Misc. 591, 593.) But there is no such presumption concerning the statute law of another State; that must be specifically proved. (*Gavin* v. *Malherbe, supra.*) Since it is established that the jurisdiction over matrimonial actions in this State is wholly statutory (*Erkenbrach* v. *Erkenbrach,* 96 N. Y. 456; *Matter of Bedrick* v. *Bedrick,* 151 Misc. 41, affd. 241 App. Div. 807), it is assumed that a West Virginia decree of divorce depends at least in part upon some West Virginia statute; indeed, respondent's counsel invokes sections of chapter 48 (Domestic Relations) of the West Virginia Code. Consequently, because section 391 of the Civil Practice Act does not relate to this court, and the Domestic Relations Court Act of the City of New York confers no power to depart from the common-law rule, and the record is barren of any factual proof of the West Virginia law, I cannot lend ear to respondent's counsel's contention that by virtue of the West Virginia law the aforementioned September 13, 1923, decree did not capacitate petitioner to contract a valid marriage with respondent.

Finally, no weight is accorded to the argument for petitioner that respondent's alleged knowledge of all the facts relating to petitioner's first marriage and divorce and his inducing her to enter into a supposedly legal marital relationship with him estops respondent from now questioning *by way of defense* the validity of the October 21, 1935, ceremonial marriage of the parties. See discussion of the analogous plea of estoppel and the limited effect of *Krause* v. *Krause* (282 N. Y. 355) in *Anonymous* v. *Anonymous* (174 Misc. 496) and *Cross* v. *Cross* (177 Misc. 347). Whether respondent's conduct would bar him from the *affirmative remedy* of a judgment declaring such marriage void (Civ. Prac. Act, § 1134) is a different question, outside the jurisdiction of this court and therefore not considered.

For the foregoing reasons I must hold that respondent has not overcome the presumption of the validity of the October 21, 1935, ceremonial marriage and now find that the parties are husband and wife for purposes of a support order of this court, and, also, that petitioner is entitled to support according to respondent's means (N. Y. City Dom. Rel. Ct. Act, § 92, subd. 1) and not merely on a public charge basis.

Of course, those findings would not be binding in any future suit for annulment, separation or divorce in the Supreme Court

of the State of New York. (*Loomis* v. *Loomis*, 288 N. Y. 222.) And under the particular circumstances respondent is hereby allowed to reopen in this court the question of the validity of the marriage by appropriate application before July 1, 1943. That is, there is hereby reserved to him the right to ask that today's order be vacated prospectively when and if, before July 1, 1943, at a hearing before me or another justice of this court, he can adduce competent evidence that " Albert Reid " was alive on October 21, 1935, and that the above-described September 13, 1923, decree did not free petitioner to marry respondent on October 21, 1935.

Perhaps respondent may be able to bring the alleged " Albert Reid " and the other West Virginia witness to New York City to testify *viva voce* at some date to be fixed, on at least one week's advance notice to the court, petitioner and her attorney; and if it would facilitate, I will schedule a hearing in the Manhattan Family Court on a Saturday.

July 1, 1943, is fixed as the ultimate date, both because there should not be indefinite deferment and, also, because of the possibility that the next session of the Legislature may appropriately amend the Domestic Relations Court Act of the City of New York, or the Family Court Rules may meanwhile be revised, to authorize the taking of depositions outside of the State; in which event, provided such authorization include proceedings previously instituted (see 26 C. J. S. Depositions, §§ 3, 4), respondent is also hereby permitted to renew his application for a commission upon five days' notice of motion returnable no later than June 1, 1943.

Notwithstanding the foregoing privilege to move for a *prospective* vacatur before July 1, 1943, today's order is intended as a final order, subject to appeal under Domestic Relations Court Act, section 58, and to application by either party for modification, in accordance with the usual practice, on proof of material change of circumstances. However, subject only to those qualifications, today's order must be obeyed as a final order, and any violation should be dealt with accordingly.

Respondent is therefore hereby ordered and directed to pay into this court the sum of six dollars weekly, each and every week, beginning on September 21, 1942, for the support of petitioner, until further order of the court, and the additional sum of one dollar per week in discharge of accrued temporary order arrears of five dollars, beginning with a first installment of one dollar on September 21, 1942. This order takes into account

the fact that respondent's gross earnings of thirty-eight dollars and fifty cents per week from December 6, 1941, to May 16, 1942, were predicated on a seven-day week and that for a six-day week they are thirty-two dollars and fifty-eight cents; that he has certain outstanding loans, described in the Probation Bureau Investigation Report; that he is under the expense of maintaining his twelve-year old daughter; that, notwithstanding a nervous condition, petitioner is able to work as a domestic and her earnings have averaged about ten dollars a week despite her inclination to minimize and cover up the facts concerning her actual and potential income.

Notice shall be given to the parties pursuant to the subjoined direction.