HARRY MCCARTHY, Plaintiff, *v.* MARY MCCARTHY, Defendant.
Supreme Court, Trial Term, Kings County, February 3, 1943.

*Noah Seedman* for plaintiff.

*Harry A. Spiegelman* and *John M. Wilson* for defendant.

GARVIN, J. This is an action for absolute divorce. The parties were married in the city of Hoboken, New Jersey, on November 24, 1926; thereafter and until their separation which occurred as hereinafter set forth they have resided and have been domiciled in this State except for a short period when defendant went to Reno and secured a divorce.

On November 16, 1940, at Reno, Nevada, defendant married Frederick Wentzler. Shortly thereafter they returned to New York and since November 24, 1940, have been living together as husband and wife at 1285 E. 94th street, in the borough of Brooklyn, city and State of New York, the same address at which she had resided with plaintiff until their separation and where she resided thereafter until her departure for Reno on August 25, 1940. It is plaintiff's contention that during this period of time defendant and said Wentzler were living in open, notorious adultery by reason of the fact that there was no valid decree of divorce in existence between the parties to this action; defendant on the other hand contends that on November 14, 1940, in the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, defendant duly obtained a judgment of absolute divorce against the plaintiff. A copy of that divorce decree was introduced in evidence at the trial. This defense is resisted by plaintiff on the grounds that defendant abandoned him and that both parties were at all times residents of and domiciled in the State of New York, within which State the marital *res* was situated and that the alleged residence or domicile in the State of Nevada was not *bona fide;* that defendant never intended to acquire a domicile in that State and that the sole purpose of

her stay there was to acquire a purported residence and domicile for the express purpose of allegedly conferring jurisdiction on the courts of that State with the intention of bringing the action for divorce which resulted in the decree aforesaid, and for no other purpose whatever; that the truth of the matter is that the defendant was perpetrating a fraud upon the State of New York and that the so-called domicile was a sham.

There is a dispute with respect to the circumstances under which the parties separated. Plaintiff claims the separation was occasioned by reason of certain acts and statements attributed to the defendant. This the defendant denies and asserts that the plaintiff had on two prior occasions left her; that the plaintiff without justification abandoned her and failed to contribute any moneys whatsoever for her support after the last separation occurred. The two prior separations, which are of no great significance in themselves, were not specifically denied and the failure to provide was admitted by the plaintiff.

This court has had an opportunity of observing the witnesses upon the stand and their demeanor, and has reached the conclusion that plaintiff abandoned defendant without reasonable cause. However, in the light of the prevailing opinion of the Supreme Court of the United States in *Williams* v. *North Carolina* (317 U. S. 287, decided December 21, 1942), this abandonment is no longer of any importance upon the issue of domicile in deciding whether or not a valid judgment of divorce was obtained in Nevada.

The defendant testified that she had gone to Nevada with the intention of staying there and not coming back to New York. Were it not for an exhibit that was introduced in evidence, this court might well find that her testimony was true, but a letter written by her, dated September 30, 1940, which is in evidence, completely refutes any such contention on her part. That letter reads in part as follows:

"I'd just love to hurry home as you ask me to on your post cards but until you get that Pest served and signed here I stay in Jail, away from you."

"Hurry and get me out of Jail sweetheart."

"Time is going, only one week more to stay and if such a thing should be that I am stuck for 30 days more, they won't see me for dust: I'll get out that quick: "

"and don't dare fall for that dummy either just because she looks pretty in her dancing clothes, she is just to keep you company till I get back."

These statements satisfy the court beyond any doubt that the sole purpose of her trip to Nevada was to acquire a, residence and purported domicile merely for the purpose of satisfying the statutory requirements of that State and that she did not intend to make her home there.

The testimony further showed that Wentzler arrived in Reno on November 16, 1940, at about noon, and married her about 2 P. M. that day. The explanation that within these two hours he first came to realize his love for defendant, proposed to and married her, and then induced her to return with him to New York is not accepted as true, particularly in view of the letter to which reference has been made. I am, therefore, of the opinion that plaintiff has definitely established that defendant went to Reno solely for the purpose of obtaining the divorce decree which is now being attacked; that the purported domicile was fraudulent and was ineffectual to confer jurisdiction upon the Nevada courts.

While the general rule is that a judgment may not be attacked collaterally, a different rule exists if the attack is based upon fraud in its procurement. (*Hunt* v. *Hunt,* 72 N. Y. 217; *Hall* v. *Hall,* 139 App. Div. 120; *People* v. *Townsend,* 133 Misc. 843, 847, and cases therein cited; see, also, 34 C. J. 511, § 815.) The right to impeach a judgment of another State by showing lack of domicile has been a troublesome question in the courts of various States, with a sharp diversity of opinion disclosed. This State has held, with the approval of the United States Supreme Court, that such an attack may be made upon a divorce decree obtained in a foreign State. (*Bell* v. *Bell,* 181 U. S. 175; *Kerr* v. *Kerr,* 41 N. Y. 272; *Hoffman* v. *Hoffman,* 46 N. Y. 30; *Kinnier* v. *Kinnier,* 45 N. Y. 535.) It may be added that the weight of authority is to the same effect. (See 34 C. J. 1142, § 1616; 39 A. L. R. 677 and cases therein cited; 3 Freeman on Judgments [5th ed.], § 1429, p. 2944; see, also, Black on Judgments [2d ed.], § 930 which reads as follows: " Although the point is not entirely free from doubt, it appears to be the better opinion that the recitals in the record of a divorce case, that the parties were residents of the state where the suit was instituted, do not preclude a party from showing, in another state, where the divorce comes collaterally in question, that the parties never were in fact domiciled in the former state, and that the suit was fraudulent and collusive. And this accords with the general rule, already stated and discussed, which allows the impeachment of a judgment of a sister state on the ground of want of jurisdiction, even in contradiction of the record.")

In *Knill* v. *Knill* (119 Misc. 186) a decree of divorce obtained by the husband in Nevada was refused recognition in this State on the ground that he had not obtained a *bona fide* domicile in Nevada although he had remained there for the requisite time prescribed under the Nevada statutes.

Domicile implies an actual, *bona fide* residence of one who is in a State with the intention of remaining there permanently, even though such person may, at some future time, seek a home elsewhere. " The intention required for the acquisition of a domicil of choice is an intention to make a home in fact, and not an intention to acquire a domicil." (Restatement, Conflict of Laws, § 19, p. 38.) " The motive with which a person acquires a new dwelling-place does not determine the question of the establishment of a domicil of choice, but it may be important evidence tending to show whether or not, when a new dwelling-place is acquired, there is an intention to make a home there." (Restatement, Conflict of Laws, § 22, p. 43.)

" It is often required in statutes regulating divorce proceedings that in order to obtain a divorce a libellant must reside in the state. It will be seen later that domicil in the state is required by law in order to give a court jurisdiction for divorce. Since the court lacks jurisdiction unless there. is a domicil within the state, the proper interpretation of the statute is that the residence required by it is domicil." (1 Beale on Conflict of Laws, § 10.8, p. 116.)

" Where neither party is domiciled within the state, no divorce can validly be granted." (1 Beale on Conflict of Laws, § 111.1, p. 476, *et seq.*)

" A judgment for divorce in another state may always and for all purposes be impeached by showing that neither spouse was in fact domiciled in the state at the time suit was begun, and therefore that the court which granted the decree was without jurisdiction to do so." (1 Beale on Conflict of Laws, § 111.2, p. 478.)

In Wharton on Conflict of Laws (3d ed., p. 464) it is said: " Domicil being a prerequisite to jurisdiction, it is a *petitio principii* to prove domicil by averring domicil. * * * A state may say, ' I will divorce persons on the mere residence of the petitioner; ' but a decree of divorce, based solely on such residence, though binding in the state granting it, will not be regarded as binding by states making domicil the test. So far as this country is concerned, it is generally settled that residence without domicil will not entitle a party to sue for a divorce that will bind extraterritorially. There must be a real

domicil; that is to say, the domicil must be adopted as a permanency * * * ."

It, therefore, follows that unless there be *bona fide* domicile, a judgment of divorce will not be entitled to recognition in another State.

In *Williams* v. *North Carolina* (*supra*) Mr. Justice DOUGLAS stated, at page 298: " For it seems clear that the provision of the Nevada statute that a plaintiff in this type of case must ' reside ' in the State for the required period requires him to have a domicil, as distinguished from a mere residence, in the state. * * * Each state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders. * * * Thus it is plain that each state, by virtue of its command over its domiciliaries and its large interest in the institution of marriage, can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent."

At page 302: " * * * we repeat that in this case we must assume that petitioners had a *bona fide* domicil in Nevada, not that the Nevada domicil was a sham. We thus have no question on the present record whether a divorce decree granted by the courts of one state to a resident, as distinguished from a domiciliary, is entitled to full faith and credit in another state. Nor do we reach here the question as to the power of North Carolina to refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada court, North Carolina finds that no *bona fide* domicil was acquired in Nevada."

At page 303: " So, when a court of one state acting in accord with the requirements of procedural due process alters the marital status of one domiciled in that state by granting him a divorce from his absent spouse, we cannot say its decree should be excepted from the full faith and credit clause merely because its enforcement or recognition in another state would conflict with the policy of the latter."

It clearly appears, therefore, that the only judgment of divorce based upon other than personal service which would be entitled to full faith and credit under the United States Constitution would be in the case of one actually domiciled within the State granting the divorce, as distinguished from one where the party was a resident without having the status of a domiciliary. (See *Bell* v. *Bell supra; Streitwolf* v. *Streitwolf*, 181 U. S. 179; *Kerr* v. *Kerr, supra; Hoffman* v. *Hoffman, supra; Kinnier* v. *Kinnier, supra.*)

In 3 Freeman on Judgments ([5th ed.], § 1437, p. 2959) is found the following: "notwithstanding any recitals or findings express or implied in the record, a decree of divorce may be impeached collaterally for lack of the jurisdictional facts, and particularly of the fact of domicile of the plaintiff," and earlier in section 1435, at page 2956, quoting from *Sewall* v. *Sewall* (122 Mass. 156): "'It is competent to show that a decree of divorce granted by a court of another state, although appearing on its face to be valid, is in fact void, because the libelant fraudulently, and in evasion of the law of his own domicile, procured that court to exercise jurisdiction over the case.'"

It should be noted that the decision in the *Williams* case (*supra*) was based on the fact that there had been a general verdict of guilty which was affirmed by the Supreme Court of the State of North Carolina. That State did not make any issue of domicile in the United States Supreme Court, admitting that there were sufficient facts in the record from which a jury could have found such domicile to exist. Moreover, the decision expressly excepted from its effect a situation where no *bona fide* domicile had been acquired, the court stating, as hereinbefore set forth: "we repeat that in this case  *  *  *."

There is nothing in the prevailing opinion which leads one to believe that the court intended to overrule its decision in the case of *Bell* v. *Bell* (*supra*). The prevailing opinion of Mr. Justice Douglas in *Williams* v. *North Carolina* (*supra*, 292) held: "Accordingly, we cannot avoid meeting the *Haddock* v. *Haddock* issue in this case by saying that the petitioners acquired no *bona fide* domicil in Nevada. If the case had been tried and submitted on that issue only, we would have quite a different problem, as *Bell* v. *Bell* indicates. We have no occasion to meet that issue now and we intimate no opinion on it."

It cannot be contended with any degree of seriousness — it may be assumed — that this court should sanction an attempt to perpetrate a fraud.

I find expressly that defendant obtained the Nevada divorce by fraud. It follows that there must be judgment for the plaintiff. Submit findings and judgment accordingly.