"EVELYN STANDISH," Petitioner, *v.* "SAMUEL STANDISH," Respondent.*

Domestic Relations Court of New York, Family Court, Kings County, March 1, 1943.

---

\* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York.

*Arthur I. Ahl* for petitioner.

*Frank N. Percaccia* and *Nathaniel Kramer* for respondent.

*Thomas D. Thacher, Corporation Counsel (E. Madeline Arcese* of counsel), *amicus curiæ.*

SICHER, J.   In this proceeding for support of an alleged wife decision turns on the scope and effect of *Williams* v. *North Carolina* (317 U. S. 287).

The parties intermarried, in New York city, on January 1, 1939.   Their union has been childless, and ended with respondent's disappearance on April 10, 1940.   Petition for support was filed on June 6, 1940, but because of respondent's absence from this State jurisdiction over him was not acquired until November 7, 1942.   Then followed posting of bail, Investigation Section conferences (N. Y. City Dom. Rel. Ct. Act, § 117; L. 1933, ch. 482), Probation Bureau report (N. Y. City Dom. Rel. Ct. Act, §§ 31, 128), hearings on December 28, 1942, January 9, January 26, February 2, and February 9, 1943, and a stipulation upon the record that the provisions of the Civil Practice Act, section 391, for proof and determination of foreign State law be deemed fully applicable to this proceeding.   (See " *Denton* " v. " *Denton,*" 179 Misc. 681.)

On April 16, 1941, the Circuit Court of the Sixth Judicial Circuit of the State of Florida, Penellas County, granted to respondent a final decree of absolute divorce from petitioner based on alleged due service by publication and mailing under the " 1941 Constructive Service Law of Florida " (Florida Statutes, 1941, ch. 48) and petitioner's default in appearance.

Upon advice of counsel that such Florida decree dissolved completely the marital relation with petitioner, respondent and another woman on November 17, 1942, became the principals of a marriage ceremony at Greenwich, Connecticut, and have since been living together as husband and wife.   And now relying mainly on the aforementioned December 21, 1942, United States Supreme Court decision (*Williams* v. *North Carolina, supra*), respondent pleads as a bar to the instant proceeding that Florida decree and the Domestic Relations Court Act of the City of New York, section 137, subdivision 1, namely: " If the marriage relationship shall have been terminated by final decree of the supreme court of the state of New York or by judgment of any other court of competent jurisdiction, when valid in the state of New York, a petition may be filed or an order for support made or enforced in the family court only for the benefit of a child of such marriage."

Notwithstanding the widespread lay misimpression that *Williams* v. *North Carolina* (*supra*) is revolutionary (see American Bar Association Journal, Feb. 1943, pp. 78–80), the *ratio decidendi* and circumscribing language in the prevailing opinion confine its net effect to narrow limits. Enumeration of (1) various doctrines of matrimonial litigation which that decision leaves untouched and (2) two specific changes of governing principles imposed by it may demonstrate such observation and chart the issues and explain the conclusions in the case at bar.

*(1) Doctrines untouched by* Williams *v.* North Carolina.

(a) If neither spouse was a *bona fide* domiciliary of the State where a default decree of divorce had been obtained on constructive service, such decree is not entitled to full faith and credit. (*Bell* v. *Bell*, 4 App. Div. 527, affd. 157 N. Y. 719, affd. 181 U. S. 175.)

'' The more appropriate requirement laid down in *Bell* v. *Bell*, that of a *bona fide* domicile of at least one of the spouses in the divorce state, is by no means impaired.'' (43 Columbia Law Review, 118, see *Baker* v. *Baker*, 179 Misc. 1023.)

(b) A divorce decree based on domicile of the plaintiff plus *in personam* jurisdiction over the defendant must be recognized everywhere (*Cheever* v. *Wilson*, 9 Wall. 108, 123), even in a case where the plaintiff's purported domicile may have been sham but the defendant had been served personally within the State granting the divorce or had voluntarily appeared in the suit. (*Glaser* v. *Glaser*, 276 N. Y. 296; *Borenstein* v. *Borenstein*, 151 Misc. 160, affd. 242 App. Div. 761, affd. 272 N. Y. 407.)

Doubtless the overwhelming majority of divorces procured by migratory plaintiffs in sister States of easy requirements are mutually prearranged. *Williams* v. *North Carolina* is unlikely to affect that common type of consensual divorce, except as it may perhaps influence the tactics of the bargaining for the defendant's submission to the jurisdiction by local attorney as safeguard against future attack.

(c) Where the decree is rendered in the State of the last matrimonial domicile in favor of a spouse still domiciled there, it is entitled to full faith and credit although based only on service by publication. (*Atherton* v. *Atherton*, 181 U. S. 155; *Post* v. *Post*, 149 App. Div. 452, affd. 210 N. Y. 607; *Thompson* v. *Thompson*, 226 U. S. 551.)

(d) To achieve the protection of any New York rule a party who attacks in a New York forum a sister State decree of divorce must show that the assailant was a New York domicili-

ary when that judgment was rendered. (See *Hubbard* v. *Hubbard*, 228 N. Y. 81; *Powell* v. *Powell*, 211 App. Div. 750; *Percival* v. *Percival*, 106 App. Div. 111, affd. 186 N. Y. 587.)

(e) A spouse who obtains a judgment of divorce on constructive service will not be heard to impeach that judgment collaterally in another forum (*Krause* v. *Krause*, 282 N. Y. 355; *Nathan* v. *Nathan*, 150 Misc. 895); the sole remedy is a direct attack in the original forum. (See *Guggenheim* v. *Wahl*, 203 N. Y. 390.)

Nor may the validity of a divorce decree be questioned in any other court by a spouse who takes advantage of it by remarrying. (*Kelsey* v. *Kelsey*, 204 App. Div. 116, affd. 237 N. Y. 520; *Matter of Bingham*, 265 App. Div. 463.)

(f) Apart from any compulsion of the full faith and credit clause, under appropriate circumstances a sister State decree of divorce may be recognized in New York as a matter of comity. (See *Heller* v. *Heller*, 285 N. Y. 572; *Hubbard* v. *Hubbard*, *supra*.)

(g) A foreign country court divorce decree also may be recognized as a matter of comity. (*Gould* v. *Gould*, 235 N. Y. 14.) But a "mail-order" Mexican divorce is considered null and void in New York. (*Baumann* v. *Baumann*, 250 N. Y. 382; *Vose* v. *Vose*, 280 N. Y. 779; *Matter of Alzman* v. *Maher*, 231 App. Div. 139; see *Anonymous* v. *Anonymous*, 174 Misc. 906, 910–912.)

(h) Want of jurisdiction over the person or subject-matter is always open to inquiry (*Milliken* v. *Meyer*, 311 U. S. 457), notwithstanding the recital of jurisdictional facts in the sister State decree, which may be questioned collaterally also for fraud. (*Hunt* v. *Hunt*, 72 N. Y. 217; *Kerr* v. *Kerr*, 41 N. Y. 272; cf. *Watters* v. *Watters*, 259 App. Div. 611, 613.)

(i) A pertinent application of the principle just stated has been the refusal of New York courts to enforce against a New York domiciliary a constructive-service default decree of divorce procured in a sister State by a New York resident who journeyed there solely to secure a divorce and without genuine intent to establish a permanent domicile. (See *Fischer* v. *Fischer*, 254 N. Y. 463; *Lefferts* v. *Lefferts*, 263 N. Y. 131; *Knill* v. *Knill*, 119 Misc. 186; cf. *Streitwolf* v. *Streitwolf*, 181 U. S. 179.)

The reported facts in *Williams* v. *North Carolina* present actually a typical tourist-plaintiff divorce picture of that genre, as pungently remarked in Mr. Justice JACKSON's dissenting opinion (p. 313). However, for procedural reasons and because North Carolina " admits that there probably is enough evidence

in the record to require that petitioners be considered ' to have been actually domiciled in Nevada ' " (DOUGLAS, J., p. 291) and " North Carolina did not base its disregard of the Nevada decrees on the claim that they were a fraud and a sham * * * " (FRANKFURTER, J., p. 306), the prevailing opinion expressly states: " * * * in this case we must assume that petitioners had a *bona fide* domicil in Nevada, not that the Nevada domicil was a sham. We thus have no question on the present record whether a divorce decree granted by the courts of one state to a resident, as distinguished from a domiciliary, is entitled to full faith and credit in another state. Nor do we reach here the question as to the power of North Carolina to refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada court, North Carolina finds that no *bona fide* domicil was acquired in Nevada." (P. 302.)'

Also: " Accordingly, we cannot avoid meeting the *Haddock* v. *Haddock* issue in this case by saying that the petitioners acquired no *bona fide* domicil in Nevada. If the case had been tried and submitted on that issue only, we would have quite a different problem, as *Bell* v. *Bell* indicates. We have no occasion to meet that issue now and we intimate no opinion on it. However it might be resolved in another proceeding, we cannot evade the constitutional issue in this case on the easy assumption that petitioners' domicil in Nevada was a sham and a fraud. Rather, we must treat the present case for the purpose of the limited issue before us precisely the same as if petitioners had resided in Nevada for a term of years and had long ago acquired a permanent abode there." (P. 292.)

It is a truism that each State of the Union retains untrammeled power over the formation and dissolution of marriages of its own domiciliaries (see *Maynard* v. *Hill*, 125 U. S. 190), subject only to the limitations of the due process and full faith and credit clauses of the Federal Constitution (14th Amendt. § 1; art. IV, § 1). Therefore the decisions of the New York Court of Appeals and Appellate Divisions are controlling upon all lower courts in this State except as overridden by an express pronouncement of the United States Supreme Court upon a specific Federal constitutional point.

Conceivably, the United States Supreme Court may ultimately determine that the first State's adjudication that the procurer of the divorce decree was a *bona fide* domiciliary of that State is binding on the courts of the second State, under the theory that " the full faith and credit clause of the Constitution pre-

cludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principle on which the judgment is based '' (*Milliken* v. *Meyer, supra,* 462; *Fauntleroy* v. *Lum,* 210 U. S. 230). In this connection there is pertinence in Mr. Justice JACKSON's observation (p. 224) that '' the Nevada court made no finding that the parties had a ' domicile ' there. It only found a residence — sometimes, but not necessarily, an equivalent.''

Moreover, possibly the particular problem may be met by an act of the New York State Legislature. (Cf. *Glaser* v. *Glaser, supra,* 302.) Or the Supreme Court may hereafter define '' the minimum standards of domicile in the divorce state sufficient to warrant application of the full faith and credit clause of the Constitution.'' (*Meyers* v. *Meyers,* 179 Misc. 680.)

Meanwhile, however, in any event the by-passing of the precise question in *Williams* v. *North Carolina* permits the New York courts to continue, as before, rejection of a sister State default decree of divorce against a New York State domiciliary in any case where it is apparent that the tourist plaintiff cocked one eye askance at the examining justice while solemnly swearing intention to remain permanently in the divorce forum State and with the other eye anxiously watched the courtroom clock in nervous concern about catching the afternoon train '' back home.''

It is therefore not surprising that local decisions since *Williams* v. *North Carolina* evince a firm disposition to deny full faith and credit to sister State default decrees of divorce on the ground that in the particular case the evidence showed no *bona fide* intent of the procurer of such constructive service judgment against the New York spouse to have established an actual domicile in the divorce forum State. (See *McCarthy* v. *McCarthy,* 179 Misc. 623; *Oberlander* v. *Oberlander,* 179 Misc. 459; *Baker* v. *Baker, supra;* cf. *Jiranek* v. *Jiranek,* 179 Misc. 502, and *Matter of Bingham, supra.*)

(j) A constructive-service default judgment is void if the method of attempted notice be insufficient to satisfy the requirements of the due process clause of the Federal Constitution. (*Cheeley* v. *Clayton,* 110 U. S. 701; cf. *Milliken* v. *Meyer, supra,* 463; see Restatement, Conflict of Laws, § 109.) In *Williams* v. *North Carolina* (*supra,* 299) '' the requirements of procedural due process '' were '' not challenged here by North Carolina.''

(k) The doctrine of the '' law of the case '' renders *Williams* v. *North Carolina* inoperative retroactively to any adjudications made before December 21, 1942, and predicated on the then-prevailing rule of *Haddock* v. *Haddock* (201 U. S. 562). (See *Sears,*

*Roebuck & Co.* v. *9th Ave.-31st St. Corp.*, 275 N. Y. 388, 400.) Attempts so to upset such species of prior adjudications by invoking the overruling of *Haddock* v. *Haddock* in *Williams* v. *North Carolina* have already been properly rejected. (*McKee* v. *McKee*, 179 Misc. 617; *Granger* v. *Granger*, 179 Misc. 659; *Semaria* v. *Semaria*. 179 Misc. 653.)

(2) *Relevant changes imposed by* Williams *v.* North Carolina.

(a) Prior to *Williams* v. *North Carolina* this court was bound by the settled New York rule that, except in cases coming squarely within *North* v. *North* (47 Misc. 180, affd. 111 App. Div. 921, appeal dismissed, 192 N. Y. 563), no recognition would be accorded to the judgment of a sister State which purported to dissolve against a resident of. New York a marriage between spouses whose matrimonial domicile had been in this State and which judgment was not based on voluntary appearance or personal service within the other State where it was rendered. *Williams* v. *North Carolina* imposes a superseding rule — mandatory on every New York State court because predicated on a Federal constitutional ground — that the circumstances that the other spouse remained in the original matrimonial domicile and did not appear in the suit, but was served only by publication, do not warrant refusal to apply the full faith and credit clause to a default divorce decree granted, on due constructive service, in the State where the other spouse had acquired a *bona fide* separate domicile.

I am unable to agree with my esteemed colleague Mr. Justice SIEGEL that *Williams* v. *North Carolina* held only that " a State has the power to adjudicate the rights of its domiciliaries," but " did not decide that a State could impose its decree upon the domiciliaries of another State, that is, upon the rights of the divorced spouse who was not a domiciliary of the State where the divorce was obtained." (*Oberlander* v. *Oberlander, supra,* 464.) True, neither of the divorced spouses was a party to the North Carolina criminal prosecution of their former mates; and, although the prevailing opinion expressly declares " *Haddock* v. *Haddock* is overruled " (p. 304), strictly " it might be questioned whether such declaration is not, to a certain extent, a *dictum.*" (43 Columbia Law Review, 119.) Nevertheless, Justice DOUGLAS' prevailing opinion, read as a whole and in the light of the other three opinions, manifests a clear purpose to hold that *Haddock* v. *Haddock* was wrongly decided and that the full faith and credit clause requires that a sister State divorce granted, upon due constructive service, to a *bona fide* domiciliary of that State is binding upon the other spouse in every other State. (Cf. *Butler* v. *Butler,* 179 Misc. 651.)

(b) *Williams* v. *North Carolina* also authoritatively scuttles the distinction essayed to be introduced into the New York law by Mr. Justice GAYNOR in *North* v. *North* (*supra*) and by the proposed Restatement of Conflict of Laws, section 113.

Mr. Justice GAYNOR wrote: " The rule established by the decisions in this state is that if one spouse abandons the matrimonial domicile in this state, and goes into another state, and becomes domiciled there, and obtains a judgment of divorce there in an action in which the defendant was not served with process in that state, or in which he or she did not appear, such judgment has no extra-territorial effect, and is therefore a nullity in this state. * * * But the case at bar is different. The defendant did not abandon the matrimonial domicile in this state. On the contrary, the plaintiff severed and terminated the matrimonial domicile here * * *. The unity of domicile had been severed and ended by the plaintiff. * * * The abandoning spouse cannot get such jurisdiction in the state of his or her new domicile; but the case of the abandoned spouse is altogether different." (*North* v. *North, supra,* 181–182.)

And the Restatement of the Law of Conflict of Laws, section 113, proposes: " A state can exercise through its courts jurisdiction to dissolve the marriage of spouses of whom one is domiciled within the state and the other is domiciled outside the state, if (a) the spouse who is not domiciled in the state * * * (2) by his or her misconduct has ceased to have the right to object to the acquisition of such separate home."

The doctrine in *North* v. *North* (*supra*) has been, on the one hand, followed, and, on the other hand, criticized, ignored or overlooked (see authorities collated in *Castellani* v. *Castellani,* 28 N. Y. S. 2d 879, 899); and the above-quoted provision of the Restatement of the Law of Conflict of Laws has likewise not been accepted universally. (See 32 Illinois Law Review, 796.) In any event, the *coup de grace* was dealt to any such line of cleavage by *Williams* v. *North Carolina* in the clearly stated purpose of the prevailing opinion (as expressed in *Matter of Bingham, supra,* at page 466) " to remove from the question of full faith and credit consideration of the subsidiary question whether the person who had removed from the marital domicile had lawfully done so." (Accord, *McCarthy* v. *McCarthy, supra.*)

For, DOUGLAS, J., states: "And all that would flow from the legalistic notion that where one spouse is wrongfully deserted he retains power over the matrimonial domicil so that the domicil of the other spouse follows him wherever he may go, while, if he is to blame, he retains no such power. But such con-

siderations are inapposite. \* \* \* Furthermore, the fault or wrong of one spouse in leaving the other becomes under that view a jurisdictional fact on which this Court would ultimately have to pass. Whatever may be said as to the practical effect which such a rule would have in clouding divorce decrees, the question as to where the fault lies has no relevancy to the existence of state power in such circumstances. See Bingham, *In the Matter of Haddock* v. *Haddock*, 21 Corn. L. Q. 393, 426. The existence of the power of a state to alter the marital status of its domiciliaries, as distinguished from the wisdom of its exercise, is not dependent on the underlying causes of the domestic rift. \* \* \* *Atherton* v. *Atherton,* which preceded *Haddock* v. *Haddock,* and *Thompson* v. *Thompson*, 226 U. S. 551, which followed it, recognized that the power of the state of the matrimonial domicil to grant a divorce from the absent spouse did not depend on whether his departure from the state was or was not justified. As stated above, we see no reason, and none has here been advanced, for making the existence of state power depend on an inquiry as to where the fault in each domestic dispute lies. And it is difficult to prick out any such line of distinction in the generality of the words of the full faith and credit clause.'' (P. 300.)

And FRANKFURTER, J., states: '' We cannot, by making ' jurisdiction ' depend upon a determination of who is the deserter and who the deserted, or upon the shifting notions of policy concealed by the cloudy abstraction of ' matrimonial domicile,' turn this into a divorce and probate court for the United States.'' (Pp. 304, 305.)

Accordingly, in the case at bar considerable latitude was allowed counsel on the following issues: (1) whether the Florida divorce procured by respondent was founded upon a *bona fide* actual domicile; (2) the content of the Florida proceedings and whether they conformed with the requirements of due process; and (3) provisionally, so as to preserve petitioner's rights upon any appeal, the circumstances of the separation, notwithstanding that, in my view, *Williams* v. *North Carolina* renders irrelevant whether petitioner had first abandoned respondent — which alleged abandonment was the sole basis of the asserted validity of the Florida divorce decree in New York before the *Williams* v. *North Carolina* decision came like manna shortly after respondent's remarriage.

[There are here omitted the next following portions of the opinion reciting the facts underlying the court's finding that for a considerable period before, and also after, the filing of the bill of complaint for divorce and the entry thereon of the Florida

court default decree against petitioner (a New York resident) respondent was a *bona fide* domiciliary of the State of Florida.]

Petitioner admitted that respondent had requested her in November, 1939, to accompany him to Florida and that she had declined, ostensibly because of an early pregnancy (of which, however, respondent denied knowledge and which, petitioner testified, ended in an early miscarriage). But there is sharp conflict as to whether petitioner unjustifiably refused respondent's claimed reiterated requests to petitioner during February, March, and April, 1940, to establish their marital abode in Florida or as to whether respondent merely took French leave on or about April 10, 1940. Concededly, the parties did not see each other again until respondent's arraignment in this court on November 16, 1942, and meanwhile respondent contributed nothing towards petitioner's support. It may be significant also that the March 4, 1941, bill of divorce complaint alleges, as basis for the charge of " a wilful, obstinate and continued desertion of the plaintiff for one year," petitioner's refusal on November 15, 1939, to move to St. Petersburg, Florida, and is wholly silent concerning the renewed cohabitation in February, March, and April, 1940, at New York city. Whether or not such silence would be ground for a successful direct attack by petitioner in the Florida court, the full faith and credit clause doctrine, if otherwise applicable, would preclude collateral inquiry in this court as to the merits of the Florida judgment. (*Milliken* v. *Meyer, supra,* 462; *Fauntleroy* v. *Lum, supra.*)

On the whole, if the issue were material I should find that respondent had failed to sustain his contention that petitioner had first abandoned him. But, as stated by Mr. Justice GARVIN, in *McCarthy* v. *McCarthy* (*supra*): " In the light of the prevailing opinion of the Supreme Court of the United States in *Williams* v. *North Carolina* * * * abandonment is no longer of any importance upon the issue of domicile in deciding whether or not a valid judgment of divorce was obtained in " a sister State.

[There are here omitted the next following portions of the opinion summarizing the contents of the bill of complaint and certain other papers in the Florida action and the applicable provisions of the Florida statutes (chapters 48.01–48.14, both inclusive, and chapters 65.01–65.05, both inclusive, of Florida Statutes, 1941). The court then states, in effect, that there were introduced in evidence exemplified copies of the bill of complaint for divorce; the publication order for the defendant (the present petitioner) to appear in that action; the publisher's

affidavit; the court clerk's certificate of publication and mailing, which included the averment that "on the 4th day of March, 1941 I (the Court Clerk) mailed to the respondent, 'Evelyn Standish,' 2059 'Y' Street, Brooklyn, New York, a certified copy of such order so made in this case;" the certificate of the clerk for decree *pro confesso,* reciting that no appearance, answer or other defense has been filed by the defendant; and the final decree, entered April 16, 1941, which recites the hearing "upon the bill of complaint and the report of examiner filed herein," and that "it appearing to the court that the plaintiff is a *bona fide* resident of the State of Florida, that this court has jurisdiction of the parties and subject-matter of said cause, that the defendant has been duly and legally served with process by publication, and that a decree *pro confesso* has been duly and regularly entered against said defendant, * * * the plaintiff be and he hereby is granted an absolute divorce *a vinculo matrimonii* from said defendant."]

Petitioner categorically denied that she had ever received any papers in the aforementioned Florida divorce action or any notice of it whatever, and testified that her first knowledge of the alleged divorce was an announcement of respondent's remarriage in November, 1942.

"But if the judgment on its face appears to be a 'record of a court of general jurisdiction, such jurisdiction over the cause and parties is presumed unless disproved by extrinsic evidence, or by the record itself.'" (*Milliken* v. *Meyer, supra,* 462, citing *Adams* v. *Saenger,* 303 U. S. 59, 62.) Accordingly, the recitals in the April 16, 1941, final decree make out a *prima facie* case of due process. Petitioner's categorical denial may serve to shift the burden of going forward with the evidence, but that burden has been fully met by the introduction of duly exemplified copies of record proof of due compliance with the Florida statutes.

If that record had shown that petitioner was served merely by newspaper notice and without provision for mailing, or that the respondent had falsified her address, the Florida decree would not have been entitled to recognition, both for noncompliance with due process clause requirements (*Cheeley* v. *Clayton, supra;* Restatement, Conflict of Laws, § 109) and, in the second supposed instance, also because there would have been presented a situation in which "the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised on him by his opponent * * * or where the defendant never had knowledge of the suit, being kept in ignor-

ance by the acts of the plaintiff." (*United States* v. *Throckmorton*, 98 U. S. 61, 65.) But the address stated in the bill of complaint, the notice to appear, and the clerk's certificate of compliance is the residence of petitioner as furnished by her for the petition in this court; and although she moved from that address between June, 1940, and March, 1941, she and her parents had resided there for sixteen years and their new residence was only a short distance away upon the same street.

Upon all the evidence I find that the Florida decree fully meets the requirements of due process and that it was predicated upon a *bona fide domicile* and one which was not sham and a fraud.

The basic situation in the case at bar approximates that considered in *Butler* v. *Butler* (*supra*), in which also the constructive service default divorce decree had been procured by the deserting spouse after having established a *bona fide* domicile within the territory of the forum that granted such divorce against the spouse still in the original matrimonial domicile. Apposite is the following comment of Mr. Justice SHIENTAG: " Until the recent decision of the United States Supreme Court in *Williams* v. *North Carolina* (317 U. S. 287), the answer would be very clear. It was the public policy of this State not to recognize the validity of any divorce such as the defendant here obtained in Hawaii. *The decision in the Williams case has changed that.* * * * The defendant lived in Hawaii for four years before he obtained a divorce * * *. While the *Williams* case involved a prosecution for bigamy, the court clearly stated that the rule laid down in *Haddock* v. *Haddock* (201 U. S. 562), which supported the prior public policy of this State, would no longer be followed and that the *Haddock* case was overruled. Under the circumstances, therefore, I have no choice but to dismiss the plaintiff's complaint in this action. She has already been legally divorced by her husband." (Italics supplied.)

For the foregoing reasons, the petition is hereby dismissed; and respondent and the surety are hereby released from further obligation under the November 7, 1942, consolidated bail bond.

By virtue of *Loomis* v. *Loomis* (288 N. Y. 222), this dismissal of the petition is a determination that the marriage of the parties has been dissolved, which is binding upon them in this court unless reversed on appeal (N. Y. City Dom. Rel. Ct. Act, § 58), but it will not be *res judicata* in any matrimonial action

in the Supreme Court of the State of New York which petitioner may be advised to institute against respondent or in any action by respondent for a declaratory judgment that he and petitioner are no longer husband and wife.

Today's disposition is also without prejudice to any remedies to which petitioner may be entitled in the Circuit Court of the Sixth Judicial Circuit of the State of Florida, Penellas County, in respect of its above-described April 16, 1941, final divorce judgment and the suit in which it was rendered.

Notice shall be given to the parties in accordance with the subjoined direction.