ELIZABETH B. FLEISCHER, Plaintiff, v. JACOB J. FLEISCHER, Defendant.[†]

Supreme Court, Special Term, Broome County, February 12, 1947.

---

[*] See, also, "*Buenos*" v. "*Buenos*", 189 Misc. 262.— [REP.

[†] See, also, *Wynn* v. *Wynn*, 188 Misc. 425.— [REP.

*Hugh J. Heffern* for plaintiff.

*Harry S. Travis* for defendant.

DEYO, J. This is a motion for temporary alimony and counsel fees in a divorce action. The plaintiff and defendant were married in New York State in 1929. In 1932 the plaintiff secured a " Mail Order " Mexican decree of divorce, and subsequently married one Mortimer Harper in the State of Pennsylvania, which marriage was annulled some four years later in this State at the plaintiff's instigation, but not on the grounds of the invalidity of the Mexican decree. The plaintiff, and defendant then resumed marital relations, holding themselves out as husband and wife, until they again separated in 1944. In 1946 the alleged acts of adultery took place. The defendant opposes the motion on the grounds that the plaintiff has failed to show reasonable prospects that she will be successful in her action, primarily on the grounds that by obtaining the Mexican decree and by marrying Harper, she is estopped from attacking the decree so obtained.

There is no dispute but that the Mexican decree was absolutely invalid. The question then becomes one of estoppel, which has vexed the courts for many years, and has given rise to numerous conflicting and irreconcilable determinations. Since the decision in *Querze* v. *Querze* (290 N. Y. 13, 17) it now seems definitely established that although a void foreign divorce decree will preclude the spouse who obtained it from asserting in our courts any private claim or demand arising out of the marriage " such a decree will have no effect upon the right of either spouse to a full adjudication in our courts upon the question of the existing marital status ", including the right to alimony and counsel

fees, which is not deemed to be a private claim or demand, but is granted by statute. The quoted portion of the decision above is a definite unqualified statement, designed to put at rest the uncertainty and the confusion of earlier decisions and would seem to embrace the situation herein presented, regardless of the subsequent marriage of the party who obtained the void foreign decree, and would indicate that even under such circumstances where the party presently asserting the invalidity of such decree had recognized and relied upon it by remarriage, the doctrine of estoppel would not be applied where, as here, an adjudication was sought as to an existing marital status. As was said in *Stevens* v. *Stevens* (273 N. Y. 157, 159), an earlier decision which reached the same conclusion as did the *Querze* case (*supra*): '' Here the Court was invoked to pronounce judgment directly upon the marital status—a relationship which no stipulation or conduct of the parties could alter * * *.'' (See, also, *Heusner* v. *Heusner*, 181 Misc. 1015, 1018.)

It is true that there is authority to the effect that a spouse who treats as valid a decree of divorce, by remarrying, is thereby precluded from subsequently disputing its validity. ( *Kelsey* v. *Kelsey*, 204 App. Div. 116, affd. 237 N. Y. 520; '' *Standish* '' v. '' *Standish* '', 179 Misc. 564, 568; Restatement, Conflict of Laws, § 112; Horowitz' Manual of Divorce, § 305). I am of the opinion that the *Querze* decision (*supra*) changed the law in this respect, just as it changed the law relative to the estoppel of a spouse who invoked the jurisdiction of the foreign court.

In *Krause* v. *Krause* (282 N. Y. 355), which was distinguished and explained in the *Querze* case (290 N. Y. 13, *supra*), there has been a remarriage which undoubtedly influenced the court in imposing the estoppel. However, that case involved the decree of a sister State which at least has colorable validity, and as was pointed out in that decision, the action sought was not parallel with that previously undertaken in the divorce proceeding. Such is not the situation in the case at bar, where a Mexican decree is involved and where the action which the plaintiff seeks to take, to wit, a termination of her marriage with the defendant, is identical with the result attempted to be achieved by the invalid decree. As a practical matter, it should be noted that if estoppel had not been applied in the *Krause* case (*supra*), the defendant husband would have been able to completely avoid all financial obligations to his second wife and their child.

*Matter of Bingham* (265 App. Div. 463, leave to appeal denied 290 N. Y. 929) is not particularly helpful in the present

case, since the party estopped from attacking the invalid decree, due to his remarriage, was not only pursuing a course of action inconsistent with the decree, but also was seeking to enforce a private claim or demand, and hence would be precluded under the *Querze* case (*supra*), even in the absence of his subsequent marriage.

In the cases which have come to my attention where the spouse who, by remarriage, was deemed to have ratified the decree to such an extent that he was precluded from thereafter attacking its validity, the courts were concerned with the decrees of sister States which at least had a semblance of validity. In the instant case we are confronted with a Mexican decree of undisputed invalidity on its very face. Since that was the ground of distinction between the *Querze* case (*supra*) and the *Krause* case (*supra*), it would seem to follow that the same distinction would be made between the earlier cases and the case at bar.

One additional factor is present in the instant case which militates against an estoppel. True, the plaintiff who obtained the invalid decree recognized its validity by remarriage. After the annulment of the second marriage, however, both the plaintiff and the defendant apparently recognized and took action consistent with the invalidity of the Mexican decree by cohabiting and holding themselves out as husband and wife for several years. Such recognition of the marital status of the parties by both of the parties involved, would seem to me to nullify any prior conduct by the plaintiff in conformity with the Mexican decree, and at least places the parties on an equal footing, so far as the present action is concerned.

The defendant's further contention that the plaintiff cannot succeed in this action because of her own adulterous intercourse with Harper, does not seem to be sustainable. Such conduct constitutes a defense only if committed " under such circumstances that the defendant would have been entitled, if innocent, to a divorce." (Civ. Prac. Act, § 1153, subd. 4.) Whether or not more than five years have elapsed since the discovery by the defendant of the offense, is a question of fact, and if so, such adultery does not constitute a defense. (*Mays* v. *Mays*, 22 N. Y. S. 2d 702, affd. 261 App. Div. 984; *Ryan* v. *Ryan*, 132 Misc. 339.)

In any event, I have reached the conclusion that the papers presented are sufficient to indicate at least a reasonable prospect of success, and that therefore, the plaintiff is entitled to an allow-

ance for counsel fees to permit her to prosecute her action and for her support pending the trial of the issues.

The defendant's papers are devoid of any information relative to his earnings. I will, therefore, adjourn this matter until February 21st, to give him an opportunity to submit a wage statement and whatever other information he cares to furnish. If nothing is forthcoming by that time, I will decide this matter on the papers now before me.