## BELL *v.* BELL.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 39. Argued April 25, 26, 1900. — Decided April 15, 1901.

A decree of divorce from the bond of matrimony, obtained in the State of Pennsylvania, in which neither party is domiciled, upon service by publication and in another State, is entitled to no faith and credit in that State.

A decree for a divorce and alimony may be affirmed *nunc pro tunc* in case of death of the husband after argument in this court.

THIS was an action brought December 22, 1894, in the Supreme Court for the county of Erie and State of New York, by Mary G. Bell against Frederick A. Bell, for a divorce from the bond of matrimony for his adultery at Buffalo in the county of Erie in April and May, 1890, and for alimony.

The defendant appeared in the case, and pleaded a decree of divorce from the bond of matrimony, obtained by him January 8, 1895, in the court of common pleas for Jefferson County in the State of Pennsylvania, for her desertion.

The plaintiff replied, denying that the court in Pennsylvania had any jurisdiction to grant the decree; and alleging that no process in the suit there was ever served on her, and that neither she nor her husband ever was or became a resident or citizen of the State of Pennsylvania.

The present action was referred to a referee, who found the following facts: The parties were married at Bloomington in the State of Illinois on January 24, 1878, and thereafter lived together as husband and wife at Rochester, and afterwards at Buffalo, in the State of New York. In August, 1882, the plaintiff went to Bloomington on a visit to her mother. In her absence, the defendant packed up her wearing apparel and other property in trunks, and had them put in the stable, preparatory to sending them to her at Bloomington. In September, 1882, the plaintiff, accompanied by her mother, returned to the defendant's house, stayed there three or four days, and then left, with her mother, for Bloomington; and since then the plaintiff and defendant have not lived together, and she has always claimed her residence as being at Buffalo.

On January 8, 1895, the court of common pleas of Jefferson County in the State of Pennsylvania granted to the husband, on his petition filed April 9, 1894, alleging that he was and had been for a year a citizen of that State and a resident of that county, a decree of divorce from the bond of matrimony for her desertion, which, under the laws of Pennsylvania, was a ground for dissolving marriage. The subpœna in that action was not served upon the wife, but she was served by publication according to the laws of Pennsylvania, and she received through the mail a copy of the subpœna and of a notice of the examiner that he would attend to the duties of his appointment on December 14, 1894, at his office in Brookville in Jefferson County. She did not appear in person or by attorney, and judgment was rendered against her by default.

At the time of the beginning of that action, and of the ren-

dering of that decree, the wife was a resident of the State of New York, and the husband was not a *bona fide* resident of the State of Pennsylvania. On January 31, 1894, the husband and his sister presented a petition, upon oath, to the surrogate of Erie County for the probate of the will of their mother, in which he was described as residing at Buffalo in the county of Erie and State of New York. No evidence was offered to show that he actually changed his domicil from New York to Pennsylvania.

The referee also found the husband's adultery as alleged; and reported that the wife should have judgment for a divorce from the bond of matrimony, and for alimony in the sum of $3000 during her life, from the commencement of this action, payable quarterly, and for costs. The court confirmed his report, and rendered judgment accordingly for a divorce, alimony and costs. That judgment was affirmed by the general term, and by the Court of Appeals. 4 N. Y. App. Div. 527; 157 N. Y. 719.

The defendant sued out this writ of error, upon the ground that the judgment below did not give full faith and credit to the judgment in Pennsylvania, as required by the Constitution and laws of the United States.

After the argument of the case in this court, the defendant died; and the plaintiff moved that judgment be entered *nunc pro tunc.*

*Mr. Henry H. Seymour* for plaintiff in error.

*Mr. Charles B. Wheeler* for defendant in error.

Mr. Justice Gray, after stating the case as above, delivered the opinion of the court.

The question in this case is of the validity of the divorce obtained by the husband in Pennsylvania. No valid divorce from the bond of matrimony can be decreed on constructive service by the courts of a State in which neither party is domiciled. And by the law of Pennsylvania every petitioner for a divorce

must have had a *bona fide* residence within the State for one year next before the filing of the petition. Penn. Stats. March 13, 1815, c. 109, § 11; May 8, 1854, c. 629, § 2; *Hollister* v. *Hollister*, 6 Penn. St. 449. The recital in the proceedings in Pennsylvania of the facts necessary to show jurisdiction may be contradicted. *Thompson* v. *Whitman*, 18 Wall. 457. The referee in this case has not only found generally that at the time of those proceedings the wife was a resident of the State of New York, and the husband was not a *bona fide* resident of Pennsylvania; but has also found that on January 31, 1894, some ten weeks before he filed his petition in Pennsylvania, he described himself, under oath, in a petition for the probate of a will in Erie County in the State of New York, as a resident of that county; and that no evidence was offered that he actually changed his domicil from New York to Pennsylvania. Upon this record, therefore, the court in Pennsylvania had no jurisdiction of the husband's suit for divorce, because neither party had a domicil in Pennsylvania, and the decree of divorce was entitled to no faith and credit in New York or in any other State. *Leith* v. *Leith*, (1859) 39 N. H. 20; *People* v. *Dawell*, (1872) 25 Michigan, 247; *Sewall* v. *Sewall*, (1877) 122 Mass. 156; *Litowitch* v. *Litowitch*, (1878) 19 Kansas, 451; *Van Fossen* v. *State*, (1881) 37 Ohio State, 317; *Gregory* v. *Gregory*, (1886) 78 Maine, 187; *Dunham* v. *Dunham*, (1896) 162 Illinois, 589; *Thelen* v. *Thelen*, (1899) 75 Minnesota, 433; *Magowan* v. *Magowan*, (1899) 12 Dickinson, (57 N. J. Eq.) 322.

The death of the husband, since this case was argued, of itself terminates the marriage relation, and, if nothing more had been involved in the judgment below, would have abated the writ of error, because the whole subject of litigation would be at an end, and no power can dissolve a marriage which has already been dissolved by act of God. *Stanhope* v. *Stanhope*, (1886) 11 Prob. Div. 103, 111. But the judgment below, rendered after appearance and answer of the husband, is not only for a divorce, but for a large sum of alimony, and for costs. The wife's rights to such alimony and costs, though depending on the same grounds as the divorce, are not impaired by the husband's death, should not be affected by the delay in entering judgment here

while this court has held the case under advisement, and may be preserved by entering judgment *nunc pro tunc*, as of the day when it was argued. *Downer* v. *Howard*, (1878) 44 Wisconsin, 82; *Francis* v. *Francis*, (1879) 31 Grattan, 283; *Danforth* v. *Danforth*, (1884) 111 Illinois, 236; *Mitchell* v. *Overman*, (1880) 103 U. S. 62.

*Judgment affirmed nunc pro tunc, as of April* 26, 1900.