### J. B. REED V. THE STATE.

No. 22834. Delivered April 19, 1944.
Rehearing Denied June 6, 1945.

The opinion states the case.

*W. T. Link,* of Clarendon, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The conviction is for the offense of bigamy. The punishment assessed is confinement in the State penitentiary for a period of two years.

Appellant brings forward a number of complaints, some of

which relate to the introduction of evidence and others to the court's charge. These will be discussed in the order mentioned.

The uncontroverted evidence shows that on the 15th day of August, 1915, appellant married Ethel Dunn in Foard County, Texas; that thereafter, on the 12th day of June, 1943, and while his wife, Ethel, was still living, he married Mrs. Myrtle Roberts in Collingsworth County, and thenceforth lived and cohabited with her in Donley County, Texas. Appellant, as a defense to said charge of bigamy, introduced in evidence a duly certified copy of a judgment rendered and entered by the Hon. W. P. Keen, Judge of the District Court of Beckham County, State of Oklahoma, granting him a divorce from Ethel Dunn Reed, his first wife, and proved that the J. B. Reed mentioned in the divorce decree was the same J. B. Reed who is the defendant in the instant case. The State made an attack on the validity of said judgment: First, by introducing evidence that the law of the State of Oklahoma requires that in all actions for a divorce the plaintiff must have been an actual resident, in good faith, of the state for one year next preceding the filing of the petition and a resident of the county where the action is brought. Second, that the petition must be verified as true by the affidavit of the plaintiff; that summons may issue thereon and shall be served or publication made as in other cases. Third, that when service by publication is proper, a copy of the petition with a copy of the publication and notice attached, shall, within six days after the first publication is made, be enclosed in an envelope, addressed to the defendant at his or her place of residence, postage paid, and deposited in the nearest post-office, unless plaintiff shall make and file an affidavit that such residence is unknown to him and cannot be ascertained by any means within his control. Fourth, a certified copy of his petition for a divorce in which he alleged that he was then, and had been for more than one year next preceding the filing of his petition, a resident of the State of Oklahoma and was also a resident of Beckham County. The petition was duly sworn to by appellant on the 7th day of January, 1943, before J. A. French, a Notary Public. Fifth, that appellant made and filed an affidavit to the effect that the defendant was a non-resident of the State of Oklahoma; that he had made inquiry and diligent investigation to locate her but had been unable to do so. The State further proved that at and before the filing of said suit for divorce he (appellant) resided at Hedley in Donley County, Texas, where he had resided for approximately fifteen years. It was also shown that his wife, Ethel Dunn Reed, at and before the filing of the suit, was an inmate of the State Hospital at Wichita Falls, Texas.

To the introduction of all of said evidence appellant objected on the ground that it was irrelevant and did not shed any light upon any issue involved in the case; and because it was an attack, by evidence dehors the record, upon judgment of a court of competent jurisdiction of a sister state which, under Article 4, Section 1, of the Constitution of the United States, and the Act of Congress passed in pursuance thereof, requires each state to give full faith and credit to judgments of another state, and therefore, it was not subject to a collateral attack. He cites the case of Williams v. State of North Carolina, 317 U. S. 287, 87 L. Ed. 279, 63 S. Ct., 207, 143 A.L.R. 1273. We cannot bring ourselves to believe that the Constitution and the statutory provision referred to mean, nor was it intended to mean, that the "full faith and credit clause" should be given application to a judgment rendered by a court of competent jurisdiction regardless of the means employed which apparently conferred active jurisdiction on such court over the person and subject-matter, when if the true facts were stated, it would be obvious that it did not have jurisdiction over either. To give such effect to the "full faith and credit clause," under the circumstances stated, would be rewarding fraud and perjury. The law was designed to protect honesty, integrity, fairness and righteousness and to strike down fraud and deception wherever the same may be found to exist, although wrapped in an apparently righteous cloak. Neither the constitutional provision nor the Act of Congress referred to was intended to convert vice into virtue or prevent the courts from raising the cloak of apparent rightousness to determine from whence comes the odor of corruption A judgment of a court without active jurisdiction over the person and subject-matter is void and of no effect, and may be attacked anywhere and at any time. See Van Fossen v. State, 37 Ohio St., 317, 41 Amer. Rep. 507; State v. Westmoreland, 76 S. C. 145, 8 L. R. A. (N.S.) 842.

It seems to be a well-established rule that three things must concur and are absolutely necessary to the jurisdiction of the court, or as jurisdictional matters: First, the court must have jurisdiction of the person; second, of the subject-matter; and third, power to render the particular judgment. Otherwise all proceedings, as well as the judgment, will be void. It is stated in 34 Corpus Juris, section 1656, as follows:

"A judgment of a foreign court is always open to impeachment on the ground of want of jurisdiction over the cause or the parties."

In re Keen's Estate (Keen v. Keen, et ux), 77 S. W. (2d)

588, the Court of Civil Appeals for the Ninth Supreme Judicial District of Texas, in passing on a similar question as the one here under consideration, said:

"When a judgment recovered in one state is pleaded or presented in the courts of another state, either as a cause of action or a defense or as evidence, the party sought to be bound or affected by it may always impeach its validity, and escape its effect, by showing that the court that rendered it had no jurisdiction over the parties or the subject-matter of the suit."

15 Tex. Jur. p. 579, sec. 104, states the rule as follows:

"A divorce decree obtained in a foreign state may be attacked in Texas collaterally by showing that the court which rendered it had no jurisdiction; and this is true even though the judgment recites all necessary jurisdictional facts, and notwithstanding the provisions of article 4, section 1, of the federal constitution known as the full faith and credit clause."

In connection with the subject mentioned, the text cites the following cases: Richmond v. Sangster, 217 S. W. 723; Jones v. Bartlett, 189 S. W. 1107.

In the case of Givens v. Givens, 195 S. W. 877, Julia M. Harrison, joined by her husband, Fred W. Harrison, sought to recover against her former husband one-half of certain lands which she alleged were community estate of herself and the appellant; that the same were acquired during her coverture with him; that on November 14, 1914, she obtained a divorce from her husband in the Circuit Court of St. Louis, Missouri, and on October 20, 1915, she married F. W. Harrison. Her husband denied that the court had ever obtained jurisdiction over him in that no valid service of citation and notice were served upon him. The Court of Civil Appeals for the Fourth Judicial District of Texas, in passing on the validity of the judgment rendered by the Circuit Court of St. Louis, Missouri, said:

"It is well settled that a judgment of divorce granted in another state may be collaterally attacked by showing that the court which granted it was without jurisdiction, even though jurisdictional facts are recited in the judgment."

In support of its holding, the court cites the following cases: Norwood v. Cobb, 24 Tex. 554; Chunn v. Gray, 51 Tex. Rep. 112; Morgan v. Morgan, 21 S. W. 154; Stuart v. Cole, 92 S. W. 1040; Batjer v. Roberts, 148 S. W. 841.

While it may be conceded that the District Court of Beckham

County, Oklahoma, had potential jurisdiction of divorce proceedings, yet, unless it had acquired active jurisdiction of the parties and the subject-matter in the manner provided by law to render the particular judgment, it would be a nullity. The fact that all necessary facts were stated in the petition to confer active jurisdiction over the person and the subject-matter, if false, will not make the judgment immune against a collateral attack by proof that the jurisdictional facts alleged were untrue and did not in fact exist. If the facts did not exist, the power of the court to render a judgment did not exist; hence any judgment rendered under such circumstances is void.

In the instant case the uncontroverted evidence shows that appellant had resided in Donley County, Texas, continuously for a number of years prior to and at the time of institution of the suit for divorce. This being true, the District Court of Beckman County, Oklahoma, did not acquire active jurisdiction of the person and the subject-matter. Therefore, the judgment which it rendered was void.

As heretofore stated, appellant cites us to the case of Williams v. State of North Carolina (317 U. S. 287, 87 L. Ed 279), as supporting his contention. We see a distinction in that case from the facts in the present instance. In that case the plaintiff had actually resided in the State of Nevada for the length of time required by the law of that state, but in the instant case, neither the plaintiff nor the defendant resided in Oklahoma but both resided in the State of Texas.

Again, if appellant perpetrated a fraud upon the court by making false allegations for the purpose of conferring jurisdiction on the court, he will not be permitted to take advantage thereof to his own benefit. It appears from the record that service of citation was had by publication as a result of an affidavit in which he falsely stated in substance that he did not know the whereabouts of the defendant, Ethel Dunn Reed, when in fact he knew, or by the exercise of reasonable diligence might have known, that she was an inmate of the State Hospital at Wichita Falls, Texas. Consequently, he did not comply with the law of the State of Oklahoma with respect to the service of process. Constructive service as a result of the false affidavit was, in legal effect, no service at all.

In the case of Bell v. Bell, 181 U. S. 175, 45 L. Ed. 804, the court said:

"No valid divorce from the bond of matrimony can be decreed on constructive service by the courts of a state in which neither party is domiciled."

See also Andrews v. Andrews, 188 U. S. 14, 47 L. Ed. 366; Ingram v. Ingram, 143 Ala. 129; Field v. Field, 215 Ill. 496.

We now come to a discussion of the complaints relating to the court's charge, which are mainly addressed to Paragraphs 4, 5 and 6 thereof. His objection to Paragraph 4 is that the instruction authorized the jury to convict him for living and cohabiting with Myrtle Roberts in Donley County, when he is not charged with unlawfully living and cohabiting together with her but is charged with the offense of bigamy. There is no merit in this contention. The charge requires the jury to believe from the evidence beyond a reasonable doubt that on the 12th day of June, 1943, he married Mrs. Myrtle Roberts in Collingsworth County, Texas, and to further find from the evidence beyond a reasonable doubt that on the 1st day of September, 1943, he did live and cohabit with Myrtle Roberts in Donley County, Texas, and to further find beyond a reasonable doubt that he, the defendant, was on or about the 15th day of August, 1915, lawfully married to Ethel Dunn Reed and that she was still living before they could find the defendant guilty. The instruction to the jury that they must find from the evidence beyond a reasonable doubt that he lived and cohabited with Myrtle Roberts in Donley County was necessary for a finding of venue in this case as provided by Article 206, C.C.P. In the absence of such a finding he was entitled to an acquittal.

Appellant objected to the court's definition of the terms "actual resident in good faith" to mean "a person who is in Oklahoma to reside permanently, because it is the law that if defendant was a resident of Oklahoma at the very time the divorce suit was filed the judgment of the Oklahoma court granting him a divorce would not be subject to collateral attack even though he had not resided in such state for the required time, and even though defendant did not reside permanently in the state of Oklahoma such judgment would not be subject to collateral attack." We think this charge was more favorable to him than he was entitled to. Consequently he has no just ground of complaint.

He also addressed a number of objections to the court's charge wherein the court submitted to the jury facts raising the question of jurisdiction of the District Court of Beckham County, Oklahoma. The ground of his objections were that it was improper for the court to do so inasmuch as under Article 4, Section 1 of the Constitution of the United States and the Act of Congress passed in pursuance thereof, the divorce decree was entitled to full faith and credit and could not be collaterally

attacked for any cause. We are not in accord with his complaint. The decisions by the courts of this State are contrary to his contention. This question has been discussed already and we see no need to reiterate what we have heretofore said.

He next complains of Paragraphs 5 and 6 of the charge because the same are on the weight of the evidence. We do not believe the same to be so.

Appellant also contends that the court erred in declining to instruct the jury that he would not be guilty of bigamy if he believed that on or about the 1st day of September, 1943, he had a divorce from Ethel Dunn Reed, or if they had a reasonable doubt thereof to acquit him. Such belief must not be due as to a mistake of fact and not due to the want of proper care on his part. The only mistake which will excuse a person is one of fact and not of law. He was chargeable with knowledge of the requirements of the law as to residence in good faith for the length of time provided by the law of the State of Oklahoma of which he sought to avail himself in obtaining a divorce. He knew that he had not resided in said state the necessary length of time. It was proven that he read the petition and knew its contents when he swore to the same; and again, he must have known it when he testified to such facts as sustained his allegations. Therefore, he cannot now claim he was mistaken as to the facts.

Article 41 of the Penal Code provides as follows:

"If a person laboring under a mistake as to a particular fact shall do an act which would otherwise be criminal he is guilty of no offense, but the mistake of fact which will excuse must be such that the person so acting under a mistake would have been excusable had his conjecture as to the fact been correct, and it must also be such mistake as does not arise from a want of proper care on the part of the person so acting."

There is no evidence as to what his belief was as to the validity of the divorce decree. Without evidence from some source raising such an issue the court would not be required to give an instruction thereon.

All other matters complained of have been examined by us and found to be without merit.

The judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has

been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Upon submission of the motion for rehearing in this case, our attention was called to the fact that there was then pending before the Supreme Court of the United States the case of Williams, et al, vs. North Carolina, No. 84, October Term, 1944, involving the same legal question as here presented and decisive of this appeal. In deference thereto, disposition of the motion for rehearing was deferred, pending the decision in that case.

On May 21, 1945 (not yet reported), the Supreme Court of the United States decided the case and held that the State of North Carolina had the power to "refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada court, North Carolina finds that no bona fide domicil was acquired in Nevada."

Giving effect to that holding here, we hold that the courts of Texas had the power to find that the appellant acquired no bona fide domicil in the State of Oklahoma as would authorize him to obtain a divorce decree in that State from his Texas wife; that a decree so obtained was not a defense to the accusation of bigamy in this State.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.