Jane Deselle BRUCE, Plaintiff–Appellant,

v.

HARTFORD LIFE AND ACCIDENT INSURANCE, Defendant–Appellee.

No. 89–4951

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Aug. 7, 1990.

Rehearing Denied Sept. 6, 1990.

---

Marion A. French, Alexandria, La., for plaintiff-appellant.

Dewitt T. Methvin, Jr., Gist, Methvin, Hughes, Alexandria, La., for defendant-appellee.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

In this Louisiana diversity case, plaintiff-appellant Jane Deselle Bruce (Jane Bruce) appeals the district court's denial of her summary judgment motion and its granting that of defendant-appellee Hartford Life & Casualty Company (Hartford). We reverse and remand.

### Facts and Proceedings Below

Jane Bruce seeks to recover on Hartford's insurance policy for benefits allegedly payable to her thereunder on account of the death of Ted Matthew Bruce (Ted Bruce).

Jane Bruce and Ted Bruce were married on April 4, 1981. On September 10, 1984, Jane Bruce filed a petition for divorce against Ted Bruce in Natchitoches Parish, Louisiana. Service of process was perfected in that suit by domiciliary service on Ethel Jones, mother of Ted Bruce. Apparently Ted Bruce filed no answer or other pleadings and made no appearance. A default judgment of divorce was signed on October 30, 1984. The official record of that proceeding was mailed to Ted Bruce by the clerk of court on October 31, 1984. However, the record does not reflect that the notice of signing of judgment was ever formally served on Ted Bruce by the sheriff, by either domiciliary or personal service. Within several months after the divorce decree was signed, Jane Bruce resumed living with Ted Bruce.

At the time of the divorce proceeding, Jane Bruce was employed by Rapides Bank & Trust Co., a subsidiary of First Commerce Corporation (First Commerce). Hartford issued a group insurance policy to First Commerce on January 1, 1986. In January of that year, Jane Bruce requested and paid for spousal life insurance coverage for Ted Bruce with Hartford through First Commerce. Jane Bruce paid for such

coverage until Ted Bruce's death on June 28, 1988. On August 15, 1988, Jane Bruce filed a claim for benefits under the policy. Hartford denied the claim on the ground that Ted Bruce was not the spouse of Jane Bruce at the time of death and therefore did not meet the definition of qualified dependent under the terms of the policy. The group life insurance rider attached to the policy issued to First Commerce defines qualified dependent as "[a]n Insured Person's spouse who is not legally separated from the Insured Person...." The rider further provides in pertinent part under the heading "Termination:"

"The insurance of a Covered Dependent will terminate on the earliest of:

"....

"(3) the date the Covered Dependent no longer meets this rider's definition of a Qualified Dependent...."

Ted Bruce's death certificate indicated that he was divorced at the time of his death.

Jane Bruce filed suit against Hartford in Louisiana state court on January 6, 1989, contending that Hartford incorrectly concluded that she and Ted Bruce were divorced at the time of his death. Hartford removed the case to federal court and pleaded that Ted Bruce was never a "qualified dependent" under the policy because he and Jane Bruce had been legally divorced prior to the issuance of the policy and were never thereafter married to each other. On December 7, 1989, the court denied Jane Bruce's summary judgment motion and granted that of Hartford. Jane Bruce timely appealed.

### Discussion

Jane Bruce argues that the October 30, 1984 judgment of divorce never became a final decree and that Ted Bruce therefore was a "qualified dependent" under the Hartford policy. Two Louisiana Code of Civil Procedure articles, articles 1913 and 1974, are the crux of Jane Bruce's argument. Article 1913, which governs notice

of judgment, provides in pertinent part: "Notice of the signing of a default judgment against a defendant on whom citation was not served personally, and who filed no exceptions or answer, shall be served on the defendant by the sheriff, by either personal or domiciliary service." Article 1974, which deals with the delay for applying for a new trial, provides:

"The delay for applying for a new trial shall be seven days, exclusive of legal holidays. Except as otherwise provided in the second paragraph hereof, this delay commences to run on the day after the judgment was signed.

"When notice of the judgment is required under Article 1913, the delay for applying for a new trial commences to run on the day after the clerk has mailed, or the sheriff has served, the notice of judgment as required by Article 1913."

Because Ted Bruce was never formally served with notice of the default judgment, by either domiciliary or personal service, Jane Bruce contends that the period within which a new trial could be applied for never expired and thus the case abated when Ted Bruce died.[1]

The district court rejected Jane Bruce's position. Asserting that she had misconstrued the provisions of article 1913, the court, citing *Anderson v. Quincy,* 262 So.2d 518, 519 (La.Ct.App. 4th Cir.1972), stated that the article concerns only the time periods involved for applying for a new trial or taking appeal and that failure to serve notice of judgment in accordance with article 1913 does not affect the validity of an underlying judgment.

The court also attempted to distinguish the two cases Bruce cited in support of her position, *Arceneaux v. Arceneaux,* 232 La. 494, 94 So.2d 449 (1957), and *Draper v. Draper,* 554 So.2d 79 (La.Ct.App. 2d Cir. 1989). In *Arceneaux,* the Louisiana Supreme Court dismissed Mrs. Arceneaux's appeal of a default divorce judgment obtained by her husband, ruling that the di-

---

1. La.Code Civ.Proc. art. 428 reads: "An action does not abate on the death of a party. The only exception to this rule is an action to enforce a right or obligation which is strictly per-

sonal." Divorce is such a strictly personal action. *Draper v. Draper,* 554 So.2d 79, 84 (La.Ct. App. 2d Cir.1989).

vorce action had abated on Mr. Arceneaux's death, which occurred four days after the default judgment. In *Draper*, Marion Draper obtained a default divorce judgment against Mattie Draper, but during Marion's life Mattie was never served with notice of the judgment as required by article 1913. Following Marion's death, during the succession, Mattie for the first time was served under article 1913 with notice of the judgment and within seven days thereafter she filed for a new trial in the divorce suit, arguing that because she was not served with article 1913 notice before Marion's death, the periods within which she had had to apply for a new trial and to take appeal had not begun to run, and therefore no final judgment of divorce had ever occurred. The request for a new trial was denied by the trial court. The court of appeal, on rehearing, reversed the trial court, ruling that the divorce action abated upon Marion's death and that the judgment of divorce should have been set aside.

The district court noted that in both *Arceneaux* and *Draper* the appealing parties were the defendants in the divorce actions who were entitled to notice of the default judgments, unlike the instant case where Jane Bruce is the divorce suit plaintiff who is now seeking to nullify the divorce judgment. The court focused on the purpose of article 1913, stating that it is intended to give notice of judgment to the defaulting party. Because Jane Bruce was not entitled to notice, the court concluded that she did not have standing to contest the divorce judgment on the ground that notice was never served.

■ We find merit with Jane Bruce's contention. Rather than focus on whether Jane Bruce is entitled to turn to article 1913 to attack her divorce on the merits, the district court should have concentrated on whether the divorce action abated on Ted Bruce's death, thus effectively rendering the final divorce judgment null. It is clear that Louisiana holds the prevailing view that divorce actions abate on the death of either party. *See Arceneaux, supra; accord Bell v. Bell,* 181 U.S. 175, 21 S.Ct. 551, 553, 45 L.Ed. 804 (1901); *Dunn v. Dunn,* 439 S.W.2d 830, 834 (Tex.1969); *Howard v. Howard,* 243 Miss. 68, 137 So.2d 191, 192 (1962); *see generally* 24 Am. Jur.2d *Divorce and Separation* § 176 (1983). The *Draper* court explained that abatement pertains only to actions, *see* La. Code Civ.Proc. article 428, and not to judgments. *See Draper,* 554 So.2d at 84. The court in *Draper* also discussed the distinction in Louisiana between final and definitive judgments,[2] asserting that the former, a stage of the action, should be annulled by a trial court if the action abates. A definitive judgment, the outcome of an action, may not abate.[3] *Id.* The court concluded that because Mr. Draper died during the time in which Mrs. Draper could ask for a new trial or take an appeal[4] the action had abated and the judgment was null.[5] *Id.* at 85.

■ We find *Draper* instructive in this situation. Although Jane Bruce obtained a final judgment of divorce against Ted Bruce, that judgment never became definitive because the article 1913 notice requirements were never satisfied. Consequently, the action abated on June 28, 1988, the date

---

2. La.Code Civ.Proc. article 1842 reads: "A final judgment is definitive when it has acquired the authority of the thing adjudged."

3. Essentially a final judgment is "final" in the sense that it is appealable and not interlocutory; a definitive judgment, on the other hand, is "final" in the sense that it is no longer appealable.

4. As in the instant case, pursuant to article 1974, failure to comply with article 1913 interrupted the period within which Mrs. Draper could seek a new trial or take an appeal.

5. The Louisiana Second Circuit Court of Appeal ruled that the trial court should have granted a new trial to nullify the divorce judgment because the action had abated. *Draper,* 554 So.2d at 85.

The *Draper* court is not alone in the view that the death of either party to a divorce action during the time allowed for taking appeal causes the entire action to abate. *See* Annotation, *Effect of Death of Party to Divorce Proceeding Pending Appeal or Time Allowed for Appeal,* 33 A.L.R.4th 47, 54 (1984); 1 C.J.S. *Abatement and Revival* § 128b (1985); 24 Am.Jur.2d *Divorce and Separation* § 176 (1983).

of Ted Bruce's death, and the divorce "was thereby rendered null and of no force and effect...." *Draper*, 554 So.2d at 85. Because the case abated before a definitive judgment was obtained, Ted Bruce satisfied the policy definition of a qualified dependent.[6]

### Conclusion

For the foregoing reasons, the decision of the district court granting Hartford's summary judgment motion and denying that of Jane Bruce is reversed, and the cause is remanded for further proceedings not inconsistent herewith.

REVERSED and REMANDED.

---

6. We note that the record indicates that Jane Bruce fully paid premiums for the spousal coverage until Ted Bruce's death.

Jane Bruce also argues on appeal that Hartford is precluded from contesting the coverage because of an "incontestability clause" in the policy. The district court ruled against her on this issue; however, because of our ruling, *supra*, in her favor, we need not reach this matter.