INMAN, Judge.
 

 *653
 
 Plaintiff-Appellant Jose E. Rivera ("Plaintiff") appeals from an order dismissing his complaint for custody of his maternal grandchild under Sections 50-13.1 and 50A-101 of the North Carolina General Statutes. In dismissing the complaint, the trial court held that, due to an unabated pre-existing child custody action between the child's paternal grandparents, Defendants-Appellees Ricky L. and Jo Matthews (the "Matthews"), and Plaintiff's now-deceased daughter ("Mother"), it lacked subject matter jurisdiction to proceed. After careful review, we affirm the order of the trial court.
 

 I.
 
 FACTUAL AND PROCEDURAL HISTORY
 

 N. M. ("Nancy")
 
 [1]
 
 was born out of wedlock to Mother and R. M. ("Father") in 2007. On 5 June 2015, Mother found Father dead in the family home. Seven-year-old Nancy was at the home at the time the body was discovered. Law enforcement searched the home and discovered copious amounts and varieties of illegal drugs and associated paraphernalia. Mother was then arrested on one drug-related misdemeanor and four drug-related felony charges. The Matthews arrived at the home that same day, and Mother implored them to take care of Nancy. Nancy has stayed in the Matthews' care ever since.
 

 *654
 
 In investigating Father's death, law enforcement and the Lee County Department of Social Services ("DSS," together with the Matthews as "Defendants") interviewed Nancy. She told them that Mother injected and snorted drugs in her presence, she had seen used needles and blood in her bathroom, she frequently had to fix her own meals due to Mother's incapacitation from drug usage, and she often missed school. On at least one occasion, Nancy recounted, she had stepped on a used needle littering the floor of the home.
 

 Following their son's death and Nancy's disclosure, the Matthews filed a complaint and motion for domestic violence protective order against Mother under Section 50B-1 of our General Statutes on 9 June 2015. The trial court awarded temporary custody of Nancy to the Matthews by
 
 ex parte
 
 order later that morning.
 

 On 25 June 2015, Mother was charged with first-degree murder in the death of Father and misdemeanor child abuse of Nancy. The Matthews filed a complaint for child custody against Mother the following day (the "Custody Action"), and the trial court immediately entered an
 
 ex parte
 
 temporary custody order. Mother and the Matthews appeared for a hearing to review the
 
 ex parte
 
 temporary custody order the following week and, on 12 August 2015, the trial court entered a temporary custody order continuing Nancy's placement with the Matthews. In that order, the
 
 *166
 
 trial court concluded from the evidence and factual findings that Mother "is not a fit and proper person to exercise the care, custody and control of the minor child and has taken such actions that are inconsistent with her constitutionally protected rights as the minor child's natural parent." It also concluded that the Matthews were fit to care for Nancy and that it would be in her best interest to be placed in their sole and exclusive legal custody. The trial court dissolved the
 
 ex parte
 
 order, decreed that the Matthews have "temporary sole and exclusive legal and physical care, custody and control" over Nancy, and ordered that Mother have no contact with Nancy until further order of the court.
 

 On 28 September 2015, Plaintiff filed a complaint and motion in the Custody Action seeking visitation; that claim was subsequently denied and dismissed by the trial court, and Plaintiff did not appeal that decision. The record on appeal reveals no further action in the Custody Action following the dismissal of Plaintiff's complaint and motion.
 

 Mother died on 3 June 2016. On 16 June 2016, Plaintiff, Nancy's maternal grandfather, filed a complaint against the Matthews in a new, separate action seeking full custody of Nancy pursuant to Sections 50-13.1 and 50A-101 of our General Statutes. Although Plaintiff acknowledged
 
 *655
 
 the existence of the Custody Action, he alleged that it terminated upon Mother's death. The complaint also named DSS as a defendant, asserting that "[s]ince both biological and legal parents of the minor are deceased, [DSS] is a necessary party to this action."
 

 The Matthews filed a motion to dismiss pursuant to Rules 12(b)(1) and (6) of the North Carolina Rules of Civil Procedure on 19 August 2016 on the grounds that the earlier Custody Action was still pending and the temporary child custody order "has not been set aside and continues to remain in full force and effect." After a hearing on 28 September 2016, the trial court granted the motion to dismiss for lack of subject matter jurisdiction. In its written order filed 7 June 2017, the trial court held that the Custody Action had not abated upon Mother's death, concluding that holding otherwise would be contrary to "reason, statutory meaning and legislative intent[,]" insofar as it would render Nancy a ward of the state despite her current placement with "fit and proper legal custodians."
 

 Plaintiff filed a belated notice of appeal from the order on 10 August 2017 and a petition for writ of certiorari on 28 December 2017. We allowed Plaintiff's petition to review the trial court's order on 10 January 2018.
 

 II.
 
 ANALYSIS
 

 A. Standard of Review
 

 This Court reviews questions of subject matter jurisdiction
 
 de novo
 
 ,
 
 McKoy v. McKoy
 
 ,
 
 202 N.C. App. 509
 
 , 511,
 
 689 S.E.2d 590
 
 , 592 (2010), meaning we consider the issue anew without any consideration of or reliance upon the lower court's determination,
 
 Parker v. Glosson
 
 ,
 
 182 N.C. App. 229
 
 , 231,
 
 641 S.E.2d 735
 
 , 737 (2007). This same standard applies to questions of statutory interpretation.
 
 Swauger v. University of North Carolina At Charlotte
 
 , --- N.C. App. ----, ----,
 
 817 S.E.2d 434
 
 , 435 (2018).
 

 B. Death and Abatement In Custody Actions
 

 Plaintiff argues on appeal, as he did below, that Mother's death resulted in an abatement of the Custody Action. That argument is largely premised on a single sentence found within our Supreme Court's opinion in
 
 McIntyre v. McIntyre
 
 ,
 
 341 N.C. 629
 
 ,
 
 461 S.E.2d 745
 
 (1995) : "After an initial custody determination, the trial court retains jurisdiction on the issue of custody until the death of one of the parties or the emancipation of the youngest child."
 
 341 N.C. at 633
 
 ,
 
 461 S.E.2d at
 
 745 (citing
 
 Shoaf v. Shoaf
 
 ,
 
 282 N.C. 287
 
 , 290,
 
 192 S.E.2d 299
 
 , 302 (1972) ). While this sentence, standing in isolation and devoid of context, may appear to
 
 *656
 
 resolve the question presented by this appeal, an opinion rendered upon that language alone would do a disservice to the law
 
 [2]
 
 and, as explained
 
 infra
 
 , untether
 
 McIntyre
 
 and other related cases from their constitutional moorings. Indeed, when those decisions are considered
 
 *167
 
 fully and alongside our statutes concerning the survival of actions and the custody and visitation rights of grandparents, Plaintiff's appeal grows ever the more vexatious and the simple answer he proposes increasingly less viable. Resolution of this appeal, therefore, requires a thorough dredging of these subjects, and we begin that analysis with
 
 McIntyre
 
 .
 

 In
 
 McIntyre
 
 , paternal grandparents filed a complaint under Section 50-13.1(a) against their son and his wife for visitation with their minor granddaughters, who lived with their parents in an intact family and were not involved in any ongoing custody action.
 
 341 N.C. at 629
 
 ,
 
 461 S.E.2d at 746-47
 
 . To determine whether such a right of action existed under those circumstances, our Supreme Court conducted a review of the statutes under which grandparents may bring a suit for custody or visitation.
 
 Id.
 
 at 633,
 
 461 S.E.2d at 748-49
 
 . The Court noted that Section 50-13.5 provides grandparents with the option of filing a motion for visitation in an ongoing custody action following an initial custody determination.
 
 Id.
 
 at 633,
 
 461 S.E.2d at 748-49
 
 . The Court cited its earlier decision in
 
 Shoaf
 
 for the proposition that grandparents' rights to file for visitation persist until emancipation of the child or the death of a party to the custody action.
 
 Id.
 
 at 633,
 
 461 S.E.2d at 748
 
 . The decision in
 
 McIntyre
 
 , however, was not itself concerned with the abatement of custody actions, and its general review of statutes concerning the rights of grandparents to seek custody against the constitutional rights of parents was only conducted to determine how they "control[led the Supreme Court's] interpretation of [N.C. Gen. Stat.] § 50-13.1(a)."
 
 Id.
 
 at 634,
 
 461 S.E.2d at 749
 
 .
 
 Cf.
 

 Sharp v. Sharp
 
 ,
 
 124 N.C. App. 357
 
 , 360,
 
 477 S.E.2d 258
 
 , 260 (1996) (recounting the issue in
 
 McIntyre
 
 and concluding that its "holding was narrowly limited to suits initiated by grandparents for
 
 visitation
 
 and does not apply to suits for
 
 custody
 
 " (emphasis in original) ). The sentence in
 
 McIntyre
 
 that Plaintiff relies on constitutes
 
 dicta
 
 that, while helpful as a general statement of the law applicable to grandparents' interventions into custody disputes between parents, does not resolve the legal issue raised by the particular facts of this case.
 

 Delving into
 
 Shoaf
 
 and earlier decisions also sheds light on the mismatch between
 
 McIntyre
 
 and this case.
 
 Shoaf
 
 involved a "single question of law[,]" namely, whether a consent judgment in a custody and
 
 *657
 
 divorce action required a father to pay child support until age 21 when a subsequent change in the law reduced the age of majority to 18.
 
 282 N.C. at 289
 
 ,
 
 192 S.E.2d at 302
 
 . In holding that the father's obligation ceased at age 18, the Supreme Court observed the following:
 

 When
 
 parents
 
 of minor children invoke the jurisdiction of the court on matters involving separation, support, custody, etc., the children become wards of the court. The court, thereafter has authority to force the parent to discharge the legal obligation to support a minor child until he reaches legal age.
 
 After separation, followed by action for divorce in which a complaint has been filed or a writ of habeas corpus has issued
 
 , authority to provide for the custody of children vests in the court in which
 
 the divorce proceeding
 
 is pending. " 'Jurisdiction rests in this (trial) court so long as the action is pending and it is pending for this purpose until the death of one of the parties,' or the youngest child born of the marriage
 
 reaches the age of maturity
 
 , (emphasis added) whichever event shall first occur. (Citing many cases)."
 
 Weddington v. Weddington
 
 ,
 
 243 N.C. 702
 
 ,
 
 92 S.E.2d 71
 
 [ (1956) ].
 

 Shoaf
 
 ,
 
 282 N.C. at 289-90
 
 ,
 
 192 S.E.2d at 302
 
 (first and second emphasis added).
 

 Weddington
 
 and other cases therein all discuss a trial court's jurisdiction over a child's custody in the context of
 
 a divorce action between the child's parents
 
 .
 
 Weddington
 
 ,
 
 243 N.C. at 704
 
 ,
 
 92 S.E.2d at 73
 
 (" 'So soon as the "state of separation" between husband and wife resolves itself into ... an action for divorce ..., the jurisdiction ... and authority to provide for the custody of the children of the marriage vests in the court in which the divorce proceeding is pending. Jurisdiction rests in this court ... until the death of one of the parties[.]' " (quoting
 
 Phipps v. Vannoy
 
 ,
 
 229 N.C. 629
 
 , 632,
 
 50 S.E.2d 906
 
 , 907-08 (1948) (additional
 
 *168
 
 citations omitted) ) );
 
 Phipps
 
 ,
 
 229 N.C. at 632
 
 ,
 
 50 S.E.2d at 907-08
 
 (noting the trial court has jurisdiction over the divorce proceeding and subordinate child custody issue until the death of one of the parties). This rule has been applied in that context alone.
 
 See, e.g.,
 

 Elmore v. Elmore
 
 ,
 
 67 N.C. App. 661
 
 ,
 
 313 S.E.2d 904
 
 (1984) (holding an action for divorce and child custody abated upon the death of the husband under the common law and N.C. Gen. Stat. § 28A-18-1(b)(3) );
 
 see also
 

 Latham v. Latham
 
 ,
 
 74 N.C. App. 722
 
 , 723,
 
 329 S.E.2d 721
 
 , 722 (1985) ("[W]e rely upon the long-settled rule that a
 
 divorce action
 
 is pending for purposes of determining custody and support until the death of one of the parties or until the
 
 *658
 
 youngest child born of the marriage reaches maturity, whichever event occurs first." (citing
 
 Weddington
 
 ,
 
 243 N.C. at 704
 
 ,
 
 92 S.E.2d at
 
 73 ) (additional citations omitted) (emphasis added) ).
 
 [3]
 

 Constitutional law also cautions against the outcome advocated by Plaintiff. As recognized in
 
 McIntyre
 
 , "the common law rule is that parents have a paramount right ... to custody, care and nurture of their children, ... and that that right includes the right to determine with whom their children shall associate."
 
 341 N.C. at 631
 
 ,
 
 461 S.E.2d at 748
 
 (citations and internal quotation marks omitted). This right generally prevails against any desire by grandparents to engage with their grandchild.
 
 See
 

 Eakett v. Eakett
 
 ,
 
 157 N.C. App. 550
 
 , 553,
 
 579 S.E.2d 486
 
 , 489 (2003) (holding grandparents are entitled to custody in an action against a parent only when there is a showing of parental unfitness, as "[t]he requirement to show unfitness if a grandparent initiates a custody dispute is consistent with a parent's constitutionally protected right to the care, custody and control of the child" (citation omitted) );
 
 see also
 

 Wellons v. White
 
 ,
 
 229 N.C. App. 164
 
 , 175,
 
 748 S.E.2d 709
 
 , 718 (2013) ("To receive custody under
 
 N.C. Gen. Stat. § 50-13.1
 
 (a), grandparents must prove parental unfitness." (citing
 
 Eakett
 
 ,
 
 157 N.C. App. at 553
 
 ,
 
 579 S.E.2d at
 
 489 ) ). Thus, a custody dispute between grandparents and a parent involves a conflict between unequal interests,
 
 Eakett
 
 at 554,
 
 579 S.E.2d at 489
 
 , while a custody battle between two parents involves a conflict of equal rights,
 
 see, e.g.,
 

 Rosero v. Blake
 
 ,
 
 357 N.C. 193
 
 , 208,
 
 581 S.E.2d 41
 
 , 50 (2003) ("[T]he father's right to custody of his illegitimate child is legally equal to that of the child's mother"). It follows, then, that disputes between parents are subject to different procedural standards and safeguards than those applicable to actions between parents and non-parents:
 

 [U]nless a natural parent's conduct has been inconsistent with his or her constitutionally protected status, application of the "best interest of the child" standard in a custody dispute with a nonparent offends the Due Process Clause of the United States Constitution. Furthermore, the protected right
 
 is irrelevant in a custody proceeding between two natural parents
 
 , whether biological or adoptive,
 
 or between two parties who are not natural parents
 
 . In such instances, the trial court must determine custody using the "best interest of the child" test.
 

 *659
 

 Owenby v. Young
 
 ,
 
 357 N.C. 142
 
 , 145,
 
 579 S.E.2d 264
 
 , 266-67 (2003) (citations omitted) (emphasis added).
 

 The constitutional right vested in parents-and not grandparents-also comes into play when one parents dies. In
 
 McDuffie v. Mitchell
 
 ,
 
 155 N.C. App. 587
 
 ,
 
 573 S.E.2d 606
 
 (2002), the minors' parents divorced, with the mother receiving custody and the father visitation.
 
 155 N.C. App. at 588
 
 ,
 
 573 S.E.2d at 607
 
 . The mother died and the children began living with their maternal grandmother.
 

 Id.
 

 The grandmother subsequently filed a custody suit against the father.
 

 Id.
 

 The trial court dismissed the grandmother's complaint and we affirmed, "not[ing] that where one parent is deceased, the surviving parent has a natural and legal right to custody and control of the minor children."
 
 Id.
 
 at 589,
 
 573 S.E.2d at 607-08
 
 (citations omitted). That maxim was no less true when the sole surviving parent
 
 *169
 
 was the non-custodial parent of the children,
 
 id.
 
 at 589-90,
 
 573 S.E.2d at 608
 
 , and, because the complaint failed to allege actions inconsistent with the father's constitutional rights as a parent, we held that the maternal grandmother had failed to state a claim for custody,
 
 id.
 
 at 591,
 
 573 S.E.2d at 609
 
 .
 
 [4]
 
 Thus, as illustrated by
 
 McDuffie
 
 , even a non-custodial parent ordinarily enjoys a constitutional right to the care, custody, and control of his child that springs upon the death of the custodial parent to the exclusion of and superior to any interest held by a grandparent.
 

 Because a non-custodial parent has the benefit of this constitutional right upon the death of the custodial parent while a grandparent does not, it stands to reason that the death of a party in a divorce and custody suit would result in the action's abatement while the death of the last surviving non-custodial parent would not abate a custody action between that parent and the custodial grandparents. Stated differently, when the death of one party in a custody action does not result in an automatic vestiture of custody in another by operation of a constitutional right, the rationale for abatement as set forth in
 
 McIntyre
 
 and other decisions falters.
 

 Finally, statutory law presents a final hurdle to Plaintiff's desired outcome. Section 28A-18-1 of our general statutes provides that "[u]pon the death of any person,
 
 all demands whatsoever
 
 , and rights to prosecute or defend
 
 any action or special proceeding
 
 , existing in favor of or
 
 *660
 
 against such person, except as provided in subsection (b) hereof, shall survive to and against the personal representative or collector of the person's estate." N.C. Gen. Stat. § 28A-18-1(a) (2017) (emphasis added). The exceptions listed in subsection (b) are limited to "rights of action
 
 in favor of
 
 a decedent." N.C. Gen. Stat. § 28A-18-1(b) (2017) (emphasis added). Our Supreme Court has held that, in drafting this statute, "[t]he legislature employ[ed] language of broad signification to describe the causes of action which survive."
 
 McIntyre v. Josey
 
 ,
 
 239 N.C. 109
 
 , 111,
 
 79 S.E.2d 202
 
 , 203 (1953) (construing virtually identical language found in N.C. Gen. Stat. § 28A-18-1(a)'s predecessor statute). The Custody Action at issue here was not a cause of action in favor of Mother but a complaint for custody in favor of the Matthews and, therefore, survived Mother's death under the plain language of the statute.
 

 Having reviewed the above constitutional and statutory law, we hold that the rule espoused in
 
 McIntyre
 
 and related cases does not apply to the Custody Action, as it was not a dispute for the care, custody, and control of Nancy between two parents, and there is no surviving parent vested with constitutional rights. Instead, the Custody Action was brought by the Matthews against Mother and, following Mother's death, did not abate for reasons of constitutional law previously articulated by our appellate courts and did not abate pursuant to the plain language of Section 28A-18-1. Plaintiff offers no other grounds for abatement and, with none appearing following our analysis, we hold the trial court properly concluded that the Custody Action was still pending following Mother's death.
 

 C. Subject Matter Jurisdiction
 

 Having determined the trial court properly concluded the Custody Action did not abate, we now turn to Plaintiff's argument that he could invoke the trial court's jurisdiction to pursue custody of his granddaughter pursuant to Section 50-13.1. While that statute does provide that "[a]ny ... relative ... may institute an action or proceeding for the custody of [a] child,"
 
 N.C. Gen. Stat. § 50-13.1
 
 (a), we hold that this broad language, when construed
 
 in pari materia
 
 with more specific provisions concerning grandparent rights to visitation and custody and considered in the context of existing case law, does not support Plaintiff's position.
 

 We acknowledge that "
 
 N.C. Gen. Stat. § 50-13.1
 
 (a) grants grandparents standing to seek custody at any time."
 
 Wellons
 
 ,
 
 229 N.C. App. at 174
 
 ,
 
 748 S.E.2d at 717
 
 . Our case law, however, has generally understood this broad grant to provide grandparents with standing to bring an
 
 initial
 
 custody claim against
 
 *170
 

 parents
 
 , not a new suit against
 
 *661
 
 non-parents who have already obtained custody by order in a prior, ongoing action.
 
 See
 

 Sharp
 
 ,
 
 124 N.C. App. at 363
 
 ,
 
 477 S.E.2d at 262
 
 ("[ Section] 50-13.1(a) grants grandparents the right to bring an
 
 initial suit
 
 for custody
 
 where there are allegations that the child's parents are unfit
 
 ." (emphasis added) ),
 
 Wellons
 
 ,
 
 229 N.C. App. at 174
 
 ,
 
 748 S.E.2d at 717
 
 ("To receive custody under
 
 N.C. Gen. Stat. § 50-13.1
 
 (a), grandparents must show parental unfitness."),
 
 Eakett
 
 ,
 
 157 N.C. App. at 553
 
 , 579 S.E.2d at 489 ("The requirement to show unfitness if a grandparent initiates a custody dispute is consistent with a parent's constitutionally protected right"),
 
 and
 

 Perdue v. Fuqua
 
 ,
 
 195 N.C. App. 583
 
 , 586,
 
 673 S.E.2d 145
 
 , 148 (2009) ("[A] grandparent initiating a proceeding for custody [under Section 50-13.1(a) ] must allege unfitness of a parent due to neglect or abandonment."). Furthermore, we have held that " [N.C. Gen. Stat.] § 50-13.1(a) grants grandparents the broad privilege to institute an action for custody or visitation,
 
 as allowed in
 
 [N.C. Gen. Stat.] §§ 50-13.2(b1), 50-13.2A, and 50-13.5(j)."
 
 Eakett
 
 ,
 
 157 N.C. App. at 552
 
 , 579 S.E.2d at 488 (emphasis added). One of those statutes, Section 50-13.5(j), "permits a grandparent to petition for custody or visitation due to changed circumstances in those actions where custody has previously been determined."
 
 Perdue
 
 ,
 
 195 N.C. App. at 585
 
 ,
 
 673 S.E.2d at 147
 
 . Our Supreme Court has held that Section 50-13.5(j) is a "special provision[ that] control[s the] interpretation of [ Section] 50-13.1(a)," and "[w]e therefore must read [it] ... in conjunction with [ Section] 50-13.1(a) so as to harmonize them and give effect to consistent legislative policy."
 
 McIntyre
 
 ,
 
 341 N.C. at 634
 
 ,
 
 461 S.E.2d at 749
 
 .
 

 In the instant case, Plaintiff initiated his custody claim naming the Matthews and DSS as defendants while the Matthews' Custody Action was, as established
 
 supra
 
 Part II.B., still pending. Plaintiff did not file suit against an allegedly unfit parent, but against non-parents who were previously awarded custody in the Custody Action. And, given our holding that the Custody Action has not abated, Plaintiff's complaint against the Matthews is more akin to a request to modify the custody order entered in the Custody Action under Section 50-13.5(j) than it is an initial claim for custody under Section 50-13.1(a).
 
 [5]
 
 Construing Plaintiff's complaint in the context of the relevant statutory provisions and the existence of a custody order in the Custody Action, we hold that "under [ Section] 50-13.5(j), the proper procedure for [Plaintiff] was to file ... a
 
 *662
 
 Motion to Intervene and a Motion for Custody [in the Custody Action]."
 
 Perdue
 
 ,
 
 195 N.C. App. at 585-86
 
 ,
 
 673 S.E.2d at 147-48
 
 . Plaintiff's standing is therefore limited to filing such a motion in the Custody Action, and we hold the trial court properly concluded it lacked subject matter jurisdiction to hear Plaintiff's independent complaint for custody against the Matthews and DSS.
 

 III.
 
 CONCLUSION
 

 For the foregoing reasons, we hold the trial court properly concluded the Custody Action had not abated and affirm its dismissal of Plaintiff's complaint for lack of subject matter jurisdiction.
 

 AFFIRMED.
 

 Chief Judge McGEE and Judge DILLON concur.
 

 [1]
 

 We refer to the minor and her parents by pseudonym.
 

 [2]
 

 As well as to the parties and Nancy.
 

 [3]
 

 There is "sound reason and logic" behind the notion that all causes of action "incidental to the marital status" abate upon the death of a party,
 
 Elmore
 
 ,
 
 67 N.C. App. at 667
 
 ,
 
 313 S.E.2d at 908
 
 , as "no power can dissolve a marriage which has already been dissolved by act of God."
 
 Bell v. Bell
 
 ,
 
 181 U.S. 175
 
 , 178,
 
 21 S.Ct. 551
 
 , 553,
 
 45 L.Ed. 804
 
 , 807 (1901).
 

 [4]
 

 We note that, just as death results in the extinguishing of a parent's constitutional right to the care, custody, and control of her child, this Court has previously equated an order terminating parental rights to "a civil death penalty."
 
 Stann v. Levine
 
 ,
 
 180 N.C. App. 1
 
 , 11 n.9,
 
 636 S.E.2d 214
 
 , 220 n.9 (2006) (citation and internal quotation marks omitted).
 

 [5]
 

 Indeed, Plaintiff conceded at oral argument that: (1) if the Custody Action has not abated, then his action can only proceed as a motion in that cause; and (2) the custody order entered in the Custody Action was valid and would survive even if the Custody Action were held to have abated.